577 N.E.2d 572 (1991)
In the matter of the Termination of the Parental Rights of D.S., Mother, and D.E.S., Child.
D.S., Appellant (Respondent below),
v.
COUNTY DEPARTMENT OF PUBLIC WELFARE OF ST. JOSEPH COUNTY, Indiana, Appellee (Petitioner below).
No. 71S04-9109-CV-680.
Supreme Court of Indiana.
September 4, 1991.
*573 Anthony V. Luber, South Bend, for appellant.
Bruce J. Bondurant, South Bend, for appellee.

ON PETITION TO TRANSFER
KRAHULIK, Justice.
This cause comes to us on a petition to transfer from the Court of Appeals brought by Respondent-Appellant, D.S., ("the mother") whose parental rights were terminated by the St. Joseph Probate Court. The determinative issues involve the application of the federal Indian Child Welfare Act of 1978, 25 U.S.C. § 1901 et seq. (1988) (hereinafter "ICWA"). Specifically, the mother alleges the following errors in the proceedings below:
(1) The trial court lacked jurisdiction to hear this case.
(2) The trial court applied the wrong evidentiary standard to the facts of this case.
The record reveals that D.E.S. ("the child") was born to the mother and father on July 10, 1987. The mother is a native Potawatomi Indian and the father is Caucasian, making the child one-half Indian. The child and his parents resided in South Bend, not on an Indian reservation. The child left the hospital to go home with his mother on July 16, 1987. The next day two representatives from the St. Joseph County Welfare Department visited the home to check on the child, who had been born six weeks prematurely and was considered to be an at-risk infant due to his mother's prenatal alcohol abuse. The father forced the welfare workers to leave and the mother became upset with him for doing so and called the police. The police arrived and found the father and mother arguing and, apparently, intoxicated. After consulting with the Welfare Department, they removed the child from the home.
A hearing was held and the child was ordered detained by the Department of Welfare on July 22, 1987. After a second hearing, held on September 30, 1987, the trial court determined the child to be in need of services, pursuant to IND. CODE ANN. § 31-6-4-3(a)(1) (West 1982), and ordered that he remain in foster care until his parents demonstrated control of their substance abuse problems. The trial court conducted a hearing on termination of parental rights on January 26, 1989, during which Welfare Department workers testified that the mother had not satisfactorily completed treatment programs aimed to control her alcohol consumption and reunite her with her child. The trial court ordered, on February 3, 1989, termination of parental rights of the mother, finding that the ICWA did not apply; that substance abuse by the mother, which necessitated removal of the child from her home, would not be remedied; that reasonable services offered to help the mother fulfill her parental obligations were ineffective; and that termination of parental rights was in the best interests of the child. The trial court noted that subpoenaes had been served on two representatives of the Potawatomi Indian Nation; however, these are not contained in the record. Representatives of the Potawatomi Indian Nation were present at the original July 22, 1987, detention hearing, but not at any of the subsequent hearings.
In an unpublished memorandum decision the Court of Appeals affirmed, holding first that the trial court properly had jurisdiction to hear the case because "there was no Indian family" and because "good cause" supported the trial court's decision to not transfer to the tribal court. Matter of Termination of Parental Rights of D.S. (1990), Ind. App., No. 71A04-8908-CV-363 at 3-4. The Court of Appeals additionally held that clear and convincing evidence supported termination of parental rights of the mother. Id. at 4-5. Because the trial court did not follow the provisions of the ICWA as they relate to jurisdiction and the evidentiary standard to be applied in terminating parental rights, we must reverse.

I. Trial Court's Jurisdiction

The question of the trial court's jurisdiction concerns whether this case *574 should have been transferred to the Potawatomi tribal court, if one exists. It is true, as the Court of Appeals noted, that one of the Congressional purposes in adopting the ICWA was to prevent the breakup of the Indian family. See 25 U.S.C. §§ 1901, 1902, 1912(d) (1988). The Court of Appeals decided that the mother and her child in this case did not constitute an Indian family. We disagree and hold that a mother and child do constitute a "family". Furthermore, where the mother is a Native American Indian, the mother and child, at least presumptively for purposes of initiating ICWA inquiries, constitute an "Indian family."
An Indian child is defined in the ICWA as "any unmarried person who is under age 18 and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4) (1988). The record in the present case does not reflect whether the mother is a member of an Indian tribe, although it does show that she is an Indian. Upon remand, the factual question of tribal membership must be answered by the trial court.
Assuming that the child is an Indian child, as defined by the ICWA, then the ICWA applies and its provisions controlling termination of parental rights should have been followed by the trial court. The provisions of the ICWA reflect a preference for tribal court jurisdiction. In fact, section 1911(a) provides that the tribal court retains exclusive jurisdiction for Indian children residing or domiciled on the reservation. An illegitimate child's domicile is determined by that of his mother and her domicile is generally established by physical presence in a place in connection with an intent to remain there. Mississippi Band of Choctaw Indians v. Holyfield (1989), 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29, 46. In this case, the mother was domiciled, off the reservation, in South Bend, Indiana. Therefore, the child was domiciled in South Bend off the reservation. Consequently, section 1911(a) does not apply and the courts must proceed to section 1911(b), which also reflects a preference for tribal court jurisdiction. This section provides that, for children not domiciled within the reservation, jurisdiction must be transferred to the tribal court upon a petition by either the parent or the tribe, absent good cause not to transfer to the tribal court.
The Court of Appeals noted that no one in the present case requested such a transfer to the tribal court. However, absent proper notice, the tribe would not have had an opportunity to file such a petition. The trial judge noted at the end of the January 26, 1989, hearing that subpoenaes were served on Antonia Shubert and Loretta Hale, two representatives of the Potawatomi Indian Nation, on January 19, 1989. However, these returns are not located in the record before this Court. Therefore, there is no record to use to determine the adequacy of the content of such notice. Additionally, the record does not show whether notification directed to these two individuals complies with the notice requirement set out in the statute. The ICWA provides as follows:
(a) Notice; time for commencement of proceedings; additional time for preparation
In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in a like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceedings shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, That the parent or *575 Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding. (Emphasis supplied)
Additionally, the Bureau of Indian Affairs ("BIA") published guidelines regarding the notice requirements which correspond to and supplement the requirements in section 1912(a). These guidelines set forth in detail the notice requirements of the ICWA. Additionally, we note that the BIA also published regulations for providing notice to the Bureau in cases where the parents or the Indian child's tribe cannot be found. 25 C.F.R. § 23.11 (1990). Finally, the BIA authorizes tribes to designate an agent for service of notice of child custody proceedings. 25 C.F.R. § 23.12.
In the case before us, it does not appear that the trial court followed federal law. Although the trial judge noted verbally that Antonia Shubert and Loretta Hale received subpoenaes by personal service of the termination of parental rights hearing, copies of these subpoenaes do not appear in the record. Therefore, we cannot determine the adequacy of such notice. Furthermore, the record does not show that these women were the tribal agents designated and entitled to receive service of notice. Therefore, we must remand this case to the trial court to serve notice to the Potawatomi tribe in a form which conforms to the ICWA.

II. Evidentiary Standard and Termination of Parental Rights of Indian Children

The mother next asserts error in the proceedings below regarding the evidentiary standard used to terminate her parental rights over the child. The ICWA provides:
(f) Parental rights termination orders; evidence; determination of damage to child
No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony by qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
25 U.S.C. § 1912(f) (1988). The evidentiary standard required by the Act is clear. The welfare department is required to produce evidence which shows "beyond a reasonable doubt" that the mother's parental rights should be terminated. The trial court's order terminating the mother's parental rights does not indicate the standard of proof used. However, the court said the ICWA did not apply and instead terminated the mother's parental rights according to IND. CODE ANN. § 31-6-5-1 et seq. (West 1982). Under state law, the termination must be based on "clear and convincing evidence" that termination of parental rights is in the best interests of the child. Matter of Robinson (1989), Ind., 538 N.E.2d 1385, 1387. Therefore, proceeding under state law rather than federal law, which imposes a greater evidentiary burden of proof, was error.
Finally, the mother disputes the qualifications of the expert witnesses who testified at the termination of parental rights hearing because the ICWA refers to testimony of "qualified expert witnesses." 25 U.S.C. § 1912(f) (1988). In Matter of Adoption of T.R.M. (1988), Ind., 525 N.E.2d 298, this Court noted that the BIA established guidelines for determining who is a qualified expert witness for purposes of the ICWA. Id. at 311. The BIA states:
(b) Persons with the following characteristics are most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings:
(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.
(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

*576 (iii) A professional person having substantial education and experience in the area of his or her specialty.
44 Fed.Reg. 67583, 67593 (1979). The trial court in this case failed to inquire of the expert witnesses as to their specific qualifications related to the placement of Native American Indian children. This omission constitutes error. One of the problems the ICWA sought to correct was the failure of welfare workers to understand Indian culture and practices concerning the raising of children. House Report on Indian Child Welfare Act of 1978. H.R.Rep. No. 1386, 95th. Cong., 2d Sess. 10, Reprinted in 1978 U.S. Code Cong. & Admin.News 7530, 7532. The record does not reveal that any consideration for these concerns was given by the trial court in ruling on the underlying qualifications of the expert witnesses.

III. Conclusion

We vacate the opinion of the Court of Appeals, reverse the judgment of the trial court, and remand for proceedings to be conducted consistent with this opinion and the Indian Child Welfare Act of 1978.
SHEPARD, C.J., and DeBRULER, J., concur.
GIVAN and DICKSON, JJ., dissent without separate opinion.