833 P.2d 1249 (1992)
In the Matter of S.C. and J.C., Minors, Alleged Deprived Children.
No. 76231.
Supreme Court of Oklahoma.
July 7, 1992.
Patrick H. Roark, Kane, Kane, Kane and Roark, Bartlesville, for minor children.
L. Susan Work, Michael C. Snyder, Oklahoma City, for father.
Craig D. Corgan, Dist. Atty., Bartlesville, for the State.
*1250 SUMMERS, Justice:
The non-custodial Indian father of two minor daughters seeks review of the Court of Appeals' decision which upheld the trial court's ruling to allow the daughters to remain in the custody of an Indian foster *1251 home. The father asserts that the Indian Child Welfare Act was not followed and that he may invalidate the placement at any time. We granted certiorari to review the case in light of Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989).

I. FACTS AND PROCEDURAL HISTORY
John Chuculate, a full-blooded Cherokee Indian, is the father of S.C. and J.C. The mother of the girls is Shelley Caldwell Rodriguez. Mother and Father were never married. Mother, a non-Indian, has four other children besides S.C. and J.C., fathered by three different men. Mother has had custody of the children and has never shared custody with any of the fathers. On April 4, 1989, five of the children were taken into emergency custody by the state. When the sixth child was born later that summer it was also taken into custody. Criminal child abuse charges were filed against Mother and her boyfriend, the father of the last child.
On April 7, 1989 a petition to declare the children as deprived was filed by the state. and notice was sent to the Cherokee Nation and the Bureau of Indian Affairs.[1] S.C. and J.C. were five and six years old at the time these proceedings took place. The trial court authorized notice by publication to Chuculate, the father, because his address was unknown. Notice by publication appeared in the community newspaper on April 13, 1989. Father appeared at the first hearing held which occurred on May 15, 1989. At that time, he gave the court his address and all further notices were sent to him at that address by certified mail.
At her adjudicatory hearing, Mother stipulated to an amended petition, admitting the children were deprived and suffered from physical neglect and emotional abuse. This adjudication was held on May 19, 1989. The children, already in temporary foster care due to the emergency of their situation, were allowed to remain in the foster care. S.C. and J.C. were placed in an Indian foster home. Father was not present at this hearing.
On November 6, 1989, a petition was filed to terminate the parental rights of Mother. Father, his tribe, and the BIA were given notice of this action. On November 7, 1989, a disposition hearing was held at which Father appeared. Although the trial judge states that Father was notified of his right to counsel during his first appearance in court, the record specifically shows that the trial court notified him of his right to court-appointed counsel under the ICWA at this November 6th hearing. The Cherokee Nation was also represented at the hearing. No determination of rights occurred as to the father and a continuance was granted. From this point on Father was represented by court-appointed counsel.
After a jury trial, Mother's rights were terminated. The trial court then set a disposition hearing on Father's rights, and he was given notice. Father filed a motion to invalidate the foster care of S.C. and J.C. based on alleged violations of the ICWA. Father filed briefs and the tribe gave notice that it would intervene under 25 U.S.C. § 1911(c).
During these proceedings two home studies were completed on Father. The first was conducted by a state agency in which the case worker stated that Father's home might be considered as a placement resource. However, the case worker also noted Father's inability to maintain employment. She reported that while the living quarters of Father were clean and sanitary, the arrangement was unstable in that he was living with his girlfriend in a trailer owned by the girlfriend's mother. The two had no plans of marriage. A second study *1252 was conducted by the Cherokee tribe. This study recommended that the current foster care continue and Father be allowed visitation so that the children might become acquainted with him. In fact, at the last hearing held the tribe simply requested that Father be allowed visitation rights. It did not recommend placement with Father. A service plan was also recommended by the state agency and agreed to by the trial court which required Father to pay a small amount of child support and to begin to acquaint himself with his daughters.
The record reveals that he visited the girls only once during these proceedings. The record also reveals that the children had earlier suffered severe abuse and the case worker was concerned about moving them from the current foster placement. The case worker felt that a move would only cause harm and emotional instability. Father did not contest this finding.
The trial court, in a detailed order, refused to invalidate the foster placement of J.C. and S.C. As grounds for the decision the court stated that the children had never lived with Father and had only minimal contact with him even during these proceedings. The court found that Father did not fall within the definition of "Indian custodian" as defined by the Oklahoma ICWA nor did "he have the right to invalidate the foster care placement under the federal act since he did not have custody at the time the children were removed, nor did he ever have custody."
The Court of Appeals affirmed the trial court's ruling. In so doing, the court relied on In re D.M.J., 741 P.2d 1386 (Okla. 1985), which emphasized that the ICWA sought to preserve the Indian family, but did not extend to a situation where the Indian parent had never had custody or regular contact with a child several years of age.
On certiorari, Father claims this ruling is inconsistent with the recent Supreme Court case of Mississippi Band of Choctaw Indians v. Holyfield, supra. We granted certiorari to address the question. We find that our case law is not inconsistent with the holding of Holyfield. We uphold the trial court's decision on three independent bases: (1) the ICWA does not permit the noncustodial Indian parent to invalidate foster care placement, (2) the ICWA does not extend to this factual situation because there is no existing Indian family, and (3) even if the ICWA were applicable, there was no error which warrants invalidation of the foster care placement. Those issues briefed but not raised in the petition for certiorari are beyond our cognizance. See Ford v. Ford, 766 P.2d 950, 952 n. 1 (Okla. 1989).[2] The tribe is not a party to this appeal.

II. INDIAN CHILD WELFARE ACT
The Indian Child Welfare Act (ICWA) states as its policy the promotion and stability of Indian families and tribes as well as the protection of the best interests of Indian children. See 25 U.S.C. § 1902. Section 1914 allows for the invalidation of foster care placements under certain conditions:
Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title. (emphasis added)
Sections 1911, 1912 and 1913, as referred to by the quoted section, involve the jurisdiction and intervention by the tribe, notice and appointment of counsel, rehabilitative services, expert witness testimony and voluntary termination of parental rights.
*1253 Father urges that Section 1914 permits him to invalidate the foster care placements of his children because the trial court failed to follow in specific detail the directives of the ICWA. The State, on the other hand, urges that he is not permitted to invalidate the proceedings, because Section 1914 only allows this privilege to that parent "from whose custody such child was removed." In support of this argument, the State cites In re D.M.J., supra, and In re Baby Boy D, 742 P.2d 1059 (Okla. 1985), cert. denied, 484 U.S. 1072, 108 S.Ct. 1042, 98 L.Ed.2d 1005 (1987). Father, in response to this argument, claims that Holyfield implicitly overrules these cases, and that this Court's prior interpretation conflicts with the purposes of the ICWA.
In Baby Boy D the biological father had not assisted nor shown interest in the birth of his child. The mother placed the child up for adoption, and a month after the birth the father objected. He attempted to invalidate the adoption under Section 1914, urging violations of the ICWA. Relying on the specific language of the Act, we held that Section 1914 provided only the custodial parent with the right to invalidate an adoption. Id. at 1064. Because the father never had custody of the child he could not proceed under Section 1914 of ICWA to invalidate the adoption. Id.
The later case of In re D.M.J. reached a similar result, but did so using a different rationale. There, the biological father lost custody of his daughter in a divorce from the non-Indian mother. Years later the mother put the child up for adoption. The father sought to invalidate the adoption because of violations of the ICWA. This Court refused to allow the invalidation, relying on the stated central purpose of the Act  to prevent the breakup of the Indian family. Since there was no existing Indian family, the purpose of the act would not be furthered by its application under those circumstances.
Under these cases, Father would not be entitled to invalidate the foster placement of S.C. and J.C. for two reasons: (1) he was not the custodial parent as required by Section 1914 and (2) there was no existing Indian family being broken up as contemplated by the ICWA. Recognizing this, he urges that Holyfield overrules by implication our holdings in Baby Boy D and In re D.M.J. Thus we examine the recent ruling in Holyfield.

A. The Holyfield Ruling
Holyfield presented a case of two young Indian parents who sought an adoption by non-Indians for their newly-born twins. The parents, who resided on the reservation, travelled away from the reservation in order for the babies to be born. After the births both parents consented to the adoption. The tribe moved to vacate the adoption on the ground that the state court did not have jurisdiction, that exclusive jurisdiction was vested in the tribal courts by reason of the ICWA, Section 1911(a).
Justice Brennan, writing for the majority, framed the issue as follows:
This appeal requires us to construe the provisions of the Indian Child Welfare Act that establish exclusive tribal jurisdiction over child custody proceedings involving Indian children domiciled on the tribe's reservation ... The sole issue in this case is, as the Supreme Court of Mississippi recognized, whether the twins were "domiciled" on the reservation. 490 U.S. at 32, 42 [109 S.Ct. at 1599-1600, 1605].
Looking to Section 1911(a) (which vests exclusive jurisdiction in the tribe if the Indian child resides or is domiciled on the reservation) the Supreme Court focused on the definition of "domicile". First it held the question to be one of federal law. Next it determined domicile to be established by physical presence in a place, coupled with an intent to remain there. Id. at 48, 109 S.Ct. at 1608. In the case of an child born out of wedlock, the domicile is usually that of the mother. Id. Hence, the Court held that the twins' domicile was that of the mother  the reservation  and thus the tribe had exclusive jurisdiction.
*1254 As further justification for this decision, the Court noted that "Congress was not solely concerned about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians." Id. at 49, 109 S.Ct. at 1609. The tribe's interests in the Indian child are as protected as those of the parents. Id. at 53, 109 S.Ct. at 1610-11. In Holyfield the parents' interest in adoption by a non-Indian family could not prevail over the specific statutory language placing exclusive jurisdiction with the tribe.
Father insists that this holding, although not expressly contrary to our recent cases, implicitly overrules them. Various commentators speculate that Holyfield stands for more than just the ultimate ruling regarding domicile. See, e.g., Comment, The Indian Child Welfare Act of 1978: Does It Apply To The Adoption Of An illegitimate Indian Child?, 38 Cath.L.Rev. 511 (1989); Comment, The Indian Child Welfare Act of 1978: A Practical Guide With [Limited] Commentary, 34 S.D.L.Rev. 660 (1989).
However, Holyfield does not appear to us to be as far-reaching as Father insists. With no other decisions by the Supreme Court interpreting the ICWA, Holyfield must be considered in light of legislative history and other court's decisions.
As for the far-reaching interpretation suggested by Father, we decline to extend the case to the facts at bar. Holyfield stands for two propositions: (1) that federal law pre-empts state law as to the definition of domicile, and (2) the domicile of an Indian child is that of the mother if the child is born out of wedlock. Other courts have construed this case similarly, confining it to the issues presented and the holding reached. See, e.g. In re T.S., 245 Mont. 242, 801 P.2d 77, 82 (1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2013, 114 L.Ed.2d 100 (1990); In re Termination of the Parental Rights of D.S., 577 N.E.2d 572, 574 (Ind. 1991). But see In re T.N.F., 781 P.2d 973, 977 (Alaska 1989), cert. denied, 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 616 (1989).[3] We do not believe that Holyfield invalidates either Baby Boy D or In re D.M.J..

B. Statutory Interpretation of Section 1914 According to Baby Boy D

Baby Boy D held that only the custodial parent has the privilege of invoking Section 1914 to invalidate state court proceedings. Other states have adopted similar interpretations of Section 1914. In the Matter of Adoption of a Child of Indian Heritage, 543 A.2d 925, 937, (N.J. 1988) presented the question of whether a noncustodial Indian father had standing under Section 1914 to invalidate an adoption. The New Jersey Supreme Court held that he did not because he did not have legal custody of the child. Because he was not the parent "from whose custody such child was removed," he did not have standing under the ICWA.
Father contends that he is a "parent" within the definition of the Act, and as a "parent" he may invalidate the foster care placement. Section 1903 defines "parent" as "any biological parent or parents of an Indian child." Clearly, Father fits this definition. However, Section 1914 qualifies the definition of "parent" in the instance where attempt is being made to invalidate a foster placement. The qualifying language is "from whose custody such child is removed." While Father meets the definition of "parent," he has not ever had custody of the children and thus cannot meet the additional requirement set out in Section 1914. He does not fit within the language of Section 1914.

C. The "Existing Indian Family" Doctrine
As for the In re D.M.J. case, the "existing Indian family" doctrine has been the *1255 subject of some discussion. Certain courts have termed it a judicially created exception to the ICWA. In the Matter of Adoption of T.N.F., 781 P.2d at 977. We disagree. D.M.J. does not create an exception not contemplated by the legislature. Rather, the preservation of the existing Indian family was an integral purpose of the ICWA from its inception. The ICWA was never meant to apply in those cases such as D.M.J., where the daughter had lived with her non-Indian mother some seven years since the divorce from the Indian father. Nor was it meant to apply in this case, where five and six years had gone by without the father's being involved. As stated in In re Adoption of Baby Boy L., 231 Kan. 199, 643 P.2d 168 (1982):
"the underlying thread that runs throughout the entire Act [is] to the effect that the Act is concerned with the removal of Indian children from an existing Indian family unit and the resultant breakup of the Indian family."
Our interpretation is supported by recent events in the Congress. In 1987 amendments were presented by the Senate Committee on Indian Affairs. These proposed amendments were occasioned by courts' refusing to apply the ICWA to situations like this one. The amendments, if enacted, would have made application of the ICWA mandatory regardless of whether the child had "previously lived in Indian country, in an Indian cultural environment or with an Indian parent." See S. 1976, 100th Cong., 1st Sess., 133 Cong. Rec. S18532, S18533 (daily ed. Dec. 19, 1987) (proposed amendment to Section 1903(1)). However, the amendments never came out of the Senate Committee, and at the time of this writing, have not been presented again. Congress, being aware of the this Court's decision in In re D.M.J., as well as decisions from other states using similar reasoning, has refused to change the statutory language to do away with this interpretation.
Our view has been adopted and followed by certain other jurisdictions. For example, in S.A. v. E.J.P., 571 So.2d 1187 (Ala. Civ. App. 1990), decided after the Holyfield decision, the court stated that the "existing Indian family" doctrine is the view which best conforms to the purposes and policies of the ICWA. See also In the matter of the Termination of the Parental Rights of D.S., 577 N.E.2d 572, 574 (Ind. 1991). Similarly, in In re Adoption of T.R.M., 525 N.E.2d 298 (Ind. 1988), cert. denied, 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989), the Indiana Supreme Court upheld an adoption by a non-Indian family of an Indian child. In so doing, the court determined that the ICWA was inapplicable because the adoption did not break up an existing Indian family. Id. at 303. See also In re S.A.M., 703 S.W.2d 603, 607 (Mo. Ct. App. 1986); In re Baby Boy L, 643 P.2d at 175. But see Matter of Adoption of Baade, 462 N.W.2d 485 (S.D. 1990).
Most recently, the Washington Supreme Court confronted the issue in Matter of Adoption of Crews, 118 Wash.2d 561, 825 P.2d 305, 310 (1992). The court was faced with an Indian mother who was attempting to invalidate an adoption to which she had consented. The child had never been in the custody of the mother. The mother admitted that her Indian heritage had never been influential in her life until she became aware that it might allow her to invalidate the adoption. Quoting the Holyfield decision, the court stated that it was the "removal of Indian children from their cultural setting" that the ICWA sought to avoid. Id. The court refused to apply the ICWA because its application would not further the purposes of the Act.
While B. may be an "Indian child" based on the Choctaw Constitution, we do not find an existing Indian family unit or environment from which B. was removed or to which he would be returned. To apply ICWA in this specific situation would not further the policies and purposes of ICWA. Crews, 825 P.2d at 310.
Extending Holyfield to control placements occurring years after the child has already been away from its Indian family would not be consistent with the stated purposes of the ICWA.
*1256 Father next urges that we have overruled In re D.M.J. in our recent case, In re Q.M.G., 808 P.2d 684, 688 (Okla. 1991). He relies on particular language which speaks to those proceedings expressly excluded from the application of the ICWA:
"Express exceptions in a statute exclude all other exceptions. Recognition of a third exception  that the act will not apply to intra-family custody disputes  would require judicial legislation rather than statutory interpretation." Id. at 688.
Father claims that this statement implicitly overrules the "existing Indian family" theory because it is a judicially-created exception. The rule restricting application of the ICWA to an existing Indian family is not of purely judicial creation. As pointed out, it is supported amply by the language of the Act itself, and shored up by Congress' refusal to amend the Act. It is not, and should not be considered, an exception to the application of the ICWA. Instead, it is simply outside the scope of the Act. In re Q.M.G. does not overrule In re D.M.J.

D. Alleged Violations of the ICWA
Even if we were to apply the ICWA in this case, violations which would warrant invalidation have not occurred. Father asserts that several of his rights under the Act were violated: (1) right to court-appointed counsel, (2) right to notice, (3) insufficient evidence to meet the clear and convincing standard of burden of proof, and (4) failure of the court to require active efforts to prevent the breakup of the family.
As for his right to court-appointed counsel, there is no dispute that he was notified of this right and was appointed counsel by the court. The trial court stated that Father was notified of this right on his first appearance. Counsel for Father admitted that Father had consulted with him before the time when notification appears in the record. Father was notified of this right and was provided counsel long before the point where his rights were affected. Father was not prejudiced by lack of counsel at the initial proceedings, as his rights were not then in question.
The ICWA does not state when in the proceedings the party shall be appointed counsel. However, a practical reading of Section 1912(b) dictates that counsel be appointed when necessary to protect the rights of the Indian parent. Here the trial court notified Father early in the proceedings, probably on the first appearance. This is sufficient to comply with Section 1912(b).
Father also asserts that he was not notified of the adjudicatory hearing on Mother's rights. By definition, the adjudicatory hearing is the hearing to determine whether the child is deprived and should be a ward of the court. See 10 O.S. 1991 § 1101(8). At this hearing, the only people present were Mother, her attorney, the state's attorney and the judge. Mother stipulated to the charges of neglect and deprivation. The record does not show that notice was given to Father.[4] However, this hearing did not involve his parental rights, only those of the Mother. The rights of Father were not affected. He suffered no prejudice.
Father also asserts that the court did not require any rehabilitative programs or remedial services to meet the "active efforts" requirements of Section 1912(d). Section 1912(d), in relevant part, requires that the State show that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." The trial court, in its order, referred to the two different home studies in this regard.
*1257 The record reveals two home studies, neither of which recommended that the children be placed with Father. The State also suggested a service plan in which Father was required to pay a minimal amount of child support and to visit the children to become acquainted with him. The case worker reported periodically to the court. These reports show that Father visited the children only once during the pendency of these proceedings. He made at least one other appointment to visit them, but cancelled. We find that were Section 1912(d) applicable the placement would not be subject to invalidation for failure to comply thereunder. See In re S.D., K.C.H. and L.W., 402 N.W.2d 346, 351 (S.D. 1987).
As for the last violation of the ICWA, Father insists that the evidence presented for placement did not meet the "clear and convincing" standard. Section 1912(e) requires that before a foster care placement may be ordered, the placement must be supported by "clear and convincing" evidence, including the testimony of expert witnesses that custody by the parent is likely to result in serious emotional or physical damage to the children.
Here, the record contains various reports of case workers who recommended that the children remain in the present foster care because a change would likely be damaging in light of their past abuse and neglect. Even the case worker for the tribe did not recommend placement with the Father, but instead urged that the foster care continue and that father be allowed visitation. Reliance on these reports was within the discretion of the trial court. In re S.D., K.C.H. and L.W., 402 N.W.2d at 350. The reports of these case workers are sufficient to meet the requirement of "expert testimony." In re Kreft, 148 Mich. App. 682, 384 N.W.2d 843, 846-47 (1986).
Furthermore, the placement by the trial court is supported by clear and convincing evidence. All the evidence presented favored allowing the children to remain in the current foster placement. The reports of the case workers indicated that damage was likely to occur if the girls were moved, because they needed emotional stability after suffering previous physical and emotional neglect. See In the Matter of K.A.B.E. and K.B.E., 325 N.W.2d 840, 843-44 (S.D. 1982).

III. CONCLUSION
We affirm the trial court's decision to leave the children in their current Indian foster care. With regard to the Father, Section 1914 does not permit a non-custodial Indian parent to invalidate a state court ruling on foster care placement. Our interpretation is consistent with the stated policies of the Indian Child Welfare Act in "prevent[ing] the breakup of the Indian family." Baby Boy D, 742 P.2d at 1063. Holyfield does not require otherwise. Finally, even if we were to rule that the ICWA applied to this case, we find no error requiring removal of the children from their current foster care placement.
The Court of Appeals' opinion is vacated and the judgment of the trial court is affirmed.
HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE, ALMA WILSON and WATT, JJ., concur.
OPALA, C.J., concurs in result.
NOTES
[1] This notice, as well as the notices hereinafter mentioned, were sent as required by 25 U.S.C. § 1912(a).
[2] Aside from the arguments focusing on the ICWA, Father asserts a due process violation in the late filing of a service plan and the failure to hold a disposition hearing. Neither issue was presented in the petition for certiorari.
[3] In cases dealing with the issue of domicile, but not necessarily involving the ICWA, courts have construed Holyfield narrowly. See, e.g., Nikoi v. Attorney General, 939 F.2d 1065, 1069 (D.C. Cir.1991); National Artists Management Co. v. Weaving, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991).
[4] There is some indication in the record that Father knew of this hearing. He was present at the hearing prior to the adjudicatory hearing.