**Leilani (Weasel) RYE, Appellant,**

v.

**Kim A. WEASEL and The Standing Rock Sioux Tribe, Appellees.**

No. 95–SC–1021–DG.

Supreme Court of Kentucky.

Nov. 21, 1996.

James H. Moore, III, Phillip Q. Ratliff, Campbell Woods Bagley Emerson McNeer & Herndon, Ashland, for appellant.

Richard M. Guarnieri, Johnson Judy True & Guarnieri, Frankfort, William R. Perry, Sonosky Chambers Sachse & Endreson, Washington, DC, Virginia D. Weed, Northeast Kentucky Legal Services, Inc., Ashland, for appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which determined that the Standing Rock Sioux Tribe continues to have exclusive jurisdiction over all custody proceedings involving the child. The Court of Appeals reversed a judgment of the Boyd Circuit Court which had granted custody of the child to Leilani Rye.

The issue is whether the application of the "Existing Indian Family Doctrine" is a proper basis for placing physical custody of the child pursuant to Kentucky law or whether the Indian Child Welfare Act provides exclusive tribal jurisdiction over child custody proceedings.

Rye argues that the Indian Child Welfare Act is not applicable because the undisputed facts of this case create an exception to the ICWA and the physical custody of the child demonstrates that the child was properly placed by the circuit court pursuant to existing Kentucky law. The Tribe contends that the Indian Child Welfare Act provides exclusive tribal jurisdiction in child custody proceedings involving Indian children who are wards of a tribal court and the Existing Indian Family Doctrine has no basis in law and would not apply in this situation in any event.

Kayla American Horse, an enrolled member of the Standing Rock Sioux Tribe, was born on April 23, 1983 on the Standing Rock Sioux Reservation in North Dakota. Her mother was a member of the Standing Rock Sioux Tribe. The identity of her biological father was never established either in a paternity action or through formal acknowledgement of paternity on the birth certificate of the child. Kim Weasel is a member of the Standing Rock Sioux Tribe. Leilani Weasel Rye is not a member of any Tribe although she claims some Indian heritage through her grandfather. When the child was eight months old, her mother was unable to care for her and placed her voluntarily with Leilani Rye and her then husband Kim Weasel. Kim and Leilani Weasel (now Rye) filed a petition for temporary custody with the tribal court which was granted in 1984 and which provided that the child would be a ward of the tribal court. The Weasels never attempted to seek amendment of the tribal court wardship order or to adopt the child. The parental rights of the mother have never been terminated. The Weasels lived in Wyoming, Delaware and New Hampshire before moving to Kentucky. They separated in April 1993. Kim Weasel returned to the reservation. A divorce petition was filed shortly thereafter.

The Boyd Circuit Court notified the Tribe of the pendency of the custody action as required by 25 U.S.C. § 1911(a). On January 27, 1994, the tribal court ordered the child returned to the reservation. The tribal court moved to intervene in the circuit court action to transfer the matter to the tribal court and to dismiss. The Boyd Circuit Court awarded custody of the child to Rye. The Tribe appealed claiming exclusive tribal jurisdiction and the Court of Appeals reversed the circuit court on that basis. 25 U.S.C. § 1911(a). This Court accepted discretionary review.

Leilani and Kim had two additional children born of their marriage, and together with Kayla, lived as a family unit from 1984 to 1993. In the intervening years, neither the biological mother, biological father or Tribe had any contact with her or contributed to her support either financially or emo-

tionally. Kayla is aware of her Indian heritage but has not lived in a Tribal Indian home. Traditional Sioux religious practices have not been observed in her home, nor have tribal dress or language. All of the Weasel children, including Kayla, attended public schools and the Roman Catholic church. Kayla is a baptized member of the Roman Catholic faith. She knows some words and phrases of the native Sioux language but cannot speak conversationally in it.

Testimony before the circuit court indicated that Kayla is a well-adjusted and happy child. She is a good student maintaining a B average and is participating in a number of extra-curricular activities. She is described by her teachers as aware of her Indian heritage but completely integrated into a well-adjusted content life as a preteenage girl. There was no allegation in the divorce proceeding that Leilani Rye was an unfit guardian, parent or custodian. Kim Weasel made a vague request for a type of joint custody, but in his deposition before the court, there was the implication that if joint custody was not granted, he had talked with representatives of the Tribe and they would "take Kayla out of the jurisdiction ..." because Leilani Weasel Rye is a nonenrolled or non-Indian.

Originally, the Boyd circuit judge ruled that transfer of the action was required by the terms of the Indian Child Welfare Act; however, upon reconsideration of that order, and following several hearings in respect to the applicability of the ICWA to the case, the circuit judge granted custody to Leilani Weasel Rye. The Tribe never appeared at any of the hearings that were held in this case at the circuit court level, and presented no evidence at the evidentiary hearing in regard to the determination of the custody of the child. The circuit court considered Rye's request for custody as a petition for custody pursuant to KRS 403.420, the Uniform Child Custody Act.

The circuit judge found that the child was not raised on the reservation because she was less than one year old when she left and had no contact with the Tribe. The court held that from the evidence the Tribe had not contributed to the support or maintenance of the child in any way and had re-fused to assist with the cost of open heart surgery for the child in 1991. The court determined that the child was a happy and well-adjusted child and recognized her clear and unambiguous expression of her desire to remain with Leilani Weasel Rye and her sisters. The circuit judge noted that the maturity and intelligence of the child was sufficient to assign significant weight to the wishes of the child. Finally, the circuit judge determined that from the evidence the child would suffer considerable emotional trauma if she were removed from her current surroundings. The judge decided that the best interests of the child under Kentucky law required that custody be awarded to Leilani Weasel Rye.

The Court of Appeals reversed and rejected any reliance on the "Existing Indian Family Doctrine" and determined that none of the cases cited by Leilani Rye involved a child who was previously adjudged by a tribal court order to be a ward of the tribal court. The Court of Appeals concluded that the Existing Indian Family Doctrine would not apply to this case. We disagree.

One of the questions we must decide is whether the decision by the Kentucky Court of Appeals was erroneous in holding that the Existing Indian Family doctrine could not be applied to the facts of this case.

In the mid–1970s, the Congress of the United States recognized a trend which had resulted in a large number of adoption-type cases in which Indian children were removed from their Indian families, tribes and culture and were placed in non-Indian homes for adoption or foster care. The United States Congress enacted the Indian Child Welfare Act of 1978, codified as 25 U.S.C. § 1911. The U.S. Congress believed that the preservation of existing Indian tribes and cultures was threatened by the non-Indian placement trend. The ICWA removed jurisdiction of certain child custody cases from state courts and places such jurisdiction with tribal courts in an attempt to preserve the Indian family tradition. In some states, the question has arisen whether the Indian Child Welfare Act should be applied so as to divest a state court of jurisdiction to determine custody of a child who has not been in an existing family even

though the child might otherwise be situated as to come within the terms of the ICWA.

A number of courts have examined the ICWA and determined that because the express purpose of Congress was to prevent the culture shock and underlying emotional trauma inherent in taking children from an Indian environment and placing them in a non-Indian environment, the ICWA applies only in those situations where Indian children are being removed from an existing Indian family.

As early as 1982, the Supreme Court of Kansas stated that the purpose of the U.S. Congress in enacting ICWA was not to dictate that a child who has never been a member of an Indian home should be removed from its primary cultural heritage and background which is non-Indian and be placed in an Indian environment that is as foreign to it as any other. *In re: Matter of Adoption of Baby Boy L*, 231 Kan. 199, 643 P.2d 168 (1982).

In 1985, the Supreme Court of Oklahoma held in *Matter of Adoption of D.M.J.*, 741 P.2d 1386 (Okla.1985), a termination/adoption case, that the ICWA was not applicable when an Indian child had been in custody of her non-Indian mother for nine years and where the child was not being removed from the custody of an existing Indian parent. *Matter of Adoption of D.M.J., supra*, discussed the purposes of the ICWA at length. The Oklahoma Supreme Court concluded that the underlying purpose of the ICWA is with the removal of Indian children from an existing Indian family situation and the resultant breakup of the Indian family. Oklahoma determined that the ICWA applies only in those situations where Indian children are being removed from an existing Indian family.

Other states have followed the Oklahoma analysis. They are *S.A. v. E.J.P.*, 571 So.2d 1187 (Ala.Civ.App.1990); *In the Interest of S.A.M.*, 703 S.W.2d 603 (Mo.App.1986); *Matter of Adoption of Crews*, 118 Wash.2d 561, 825 P.2d 305 (1992); *Matter of Adoption of T.R.M.*, 525 N.E.2d 298 (Ind.1988); *Matter of T.S.*, 245 Mont. 242, 801 P.2d 77 (1990); *Matter of D.S.*, 577 N.E.2d 572 (Ind.1991); *In re: S.C.*, 833 P.2d 1249 (Okla.1992).

The holdings of these courts have become known as the "Existing Indian Family Doctrine." Pursuant to that doctrine, the courts have held that the ICWA was not intended by Congress to be applied to cases where there is no existing Indian family or environment because the purpose and intent of Congress cannot be furthered by such applications of the Act. *Matter of Adoption of Crews, supra; Matter of Adoption of T.R.M., supra.*

The courts that have adopted the Existing Indian Family Doctrine have held that the ICWA is not applicable in its entirety even though facts were presented which might otherwise establish threshold jurisdiction under the ICWA. *See S.A. v. E.J.P., supra.* This is true even though the ICWA in § 1911(a) purports to vest exclusive jurisdiction to hear custody cases involving an Indian child in the tribal court where the child has maintained a wardship. These courts hold that if there is no existing Indian family or environment, § 1911(a) is not applicable, and the state courts retain jurisdiction. *See Matter of Adoption of T.R.M., supra.*

The Tribe argues that the Existing Indian Family Doctrine is not consistent with congressional intent and the holding of *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). The Tribe contends that because the Existing Indian Family Doctrine is not codified in the ICWA, it does not properly exist. We acknowledge that a few states have applied the ICWA but those cases are fact specific and the various authorities from other states cited by the Tribe are not persuasive.

■ We are persuaded by the opinion of the Supreme Court of Oklahoma in *In re: S.C., supra.* Oklahoma, which contains a large Indian population and consequently one of the states most often presented with this vexing problem, has been one of the leading states in developing this doctrine. The Oklahoma court states in pertinent part that recognition of the Existing Indian Family Doctrine:

... does not create an exception not contemplated by the legislature. Rather the

preservation of the existing Indian family was an integral purpose of the ICWA from its inception.

. . . . .

[T]he underlying thread that runs throughout the entire Act [is] to the effect that the act is concerned with the removal of Indian children from an existing Indian family unit and the resultant breakup of the Indian family.

. . . . .

In 1987 amendments were presented by the Senate Committee on Indian Affairs. These proposed amendments were occasioned by courts' refusing to apply the ICWA to situations like this one. The amendments, if enacted, would have made application of the ICWA mandatory regardless of whether the child had 'previously lived in Indian country, in an Indian cultural environment or with an Indian parent.' . . . However, the amendments never came out of the Senate committee . . . and have never been presented again. Congress being aware of this Court's decision in *In re: D.M.J.*, as well as decisions from other states using similar reasoning, has refused to change the statutory language to do away with this interpretation.

*In re: S.C.*, 833 P.2d at 1255.

Obviously, the U.S. Congress is aware of the Existing Indian Family Doctrine as used by Oklahoma and other courts and with such knowledge has specifically refused to take legislative action to alter that interpretation. We are persuaded that the true intent of Congress is not to disturb situations such as presented in this case, where the Indian child is fully integrated in a non-Indian family.

■ The Kentucky and Federal courts have recognized the failure of the legislature to change a known judicial interpretation of a statute as extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation of its statute when it does not amend the statute interpreted. *City of Richmond v. Public Service Commission*, Ky., 294 S.W.2d 513 (1956). Failure by the U.S. Congress to repeal an administra-

tive agency's interpretation of a congressional act is persuasive evidence that the interpretation is the one the legislature intended. *Jewish Hospital v. Department of Health & Human Services*, 791 F.Supp. 168 (W.D.Ky. 1992).

■ We agree with a Louisiana appeals court which held that after "exhaustive review of jurisprudence on this issue, the Act and its stated purpose and legislative history, we are convinced that Congress intended the Act apply only in situations involving the removal of children from an existing Indian family and Indian environment." *Hampton v. J.A.L.*, 658 So.2d 331, 334–335 (La.App. 1995). The Louisiana court went on to observe that its conclusion was supported by the Senate Committee on Indian Affairs rejection in 1987 of proposed amendments to mandate application of the ICWA regardless of whether the child had previously lived in Indian country, in an Indian cultural environment or with an Indian parent. Consequently, we believe that the Existing Indian Family Doctrine is consistent with the intent of the U.S. Congress as evidenced by its consideration of the statutory amendments that would have abolished that doctrine and its refusal to do so.

We must now consider the place of the U.S. Supreme Court case of *Mississippi Band of Choctaw Indians v. Holyfield, supra*. The Tribe argues that the Existing Indian Family Doctrine is not consistent with the holding in *Holyfield*. That case stands for the narrow basic proposition that federal law preempts state law as to the definition of domicile under the ICWA, and that the domicile of an Indian child is that of its mother if the child is born out-of-wedlock. *Cf. In re: S.C.*, 833 P.2d at 1254.

*Holyfield* did not consider the validity of the Existing Indian Family Doctrine and took no position in regard to it. *Holyfield* should not be extended beyond the scope of its specific holding. *See Matter of T.S., supra; Matter of D.S., supra.*

The Supreme Court of Washington notes that "*Holyfield* supports our conviction that ICWA is not applicable when an Indian child is not being removed from an Indian cultural setting. . . . In such a situation, whether or

when the child meets the definition of 'Indian child' under ICWA is not controlling." *Matter of Adoption of Crews*, 825 P.2d at 310–11.

*Holyfield* addressed questions of domicile and did not consider the Existing Indian Family Doctrine. Thus, *Holyfield* does not prevent the application of the doctrine here. The Oklahoma Supreme Court directly confronted the *Holyfield* question in *In re: S.C.*, *supra*, in 1992, in a case involving the attempted invalidation of foster care based on alleged violations of the ICWA in which the father raised the *Holyfield* question. The court determined that the Oklahoma case law was not inconsistent with the holding of *Holyfield* based on three independent reasons, one of which was that the ICWA does not extend to the factual situation because there was no existing Indian family.

*Holyfield* presented a case of two young Indian parents who sought an adoption by non-Indians for their newly-born twins. The parents, who resided on the reservation, traveled away from the reservation in order for the babies to be born. After the births, both parents consented to the adoption. The Tribe moved to vacate the adoption on the ground that the state court did not have jurisdiction and that exclusive jurisdiction was vested in the tribal courts by reason of the ICWA. As noted earlier, the sole issue was domicile which cannot be defeated by a temporary removal for the purpose of birth.

In *In re: S.C.*, the father claimed that *Holyfield*, although not expressly contrary to the Oklahoma cases, implicitly overruled them. Legal commentators speculated that *Holyfield* stood for more than just the narrow ruling regarding domicile. *See e.g.,* Note, *The Indian Child Welfare Act of 1978: Does it Apply to the Adoption of an Illegitimate Indian Child?*, 38 Cath.U.L.Rev. 511 (1989). We agree with the Oklahoma Supreme Court that it is mere speculation that does not have any persuasive legal basis and that *Holyfield* is not as far-reaching as some might contend. A complete discussion of this matter may be found in the *In re: S.C.* Oklahoma case.

We agree with the Oklahoma Court that the Existing Indian Family Doctrine is not really a judicially created exception, but rather that the ICWA was never meant to apply in those cases such as *Matter of Adoption of D.M.J.* and *In re: Matter of Adoption of Baby Boy L*, where the Indian children had lived with their non-Indian mothers for seven and six years respectively. The important part of the ICWA was the preservation of the existing Indian family, and it was never intended to apply to cases where there was no such factual basis. The consistent thread that runs throughout the ICWA is a concern for the removal of Indian children from an existing family unit, and the subsequent disruption of an Indian family. That is not the case presented here.

Here, there was never an existing Indian family. The father is unknown, and the mother made no contact with the child after voluntarily placing it with the foster parents. Further, the foster family, while aware of the Indian culture, did not adopt that culture as a day to day way of life, a fact that presumably could have been determined by the tribe if it chose to inquire. The Tribe retained nominal legal wardship, but expressed no interest in the child until the Kentucky divorce. The Tribe even declined to render any financial help in a medical emergency in 1991. Consequently, there is no disruption of an existing Indian family unit in this case.

We do not accept the analysis by the Court of Appeals that exclusive jurisdiction based on wardship, rather than residence or domicile, adversely affects the application of the Existing Indian Family Doctrine. The Doctrine is an exception to the jurisdictional provisions of the ICWA which does not apply to the facts of this case and is not altered by residence, domicile or wardship. There was no existing Indian family.

The argument by the Tribe that even if there was such a Doctrine, it would not apply in this situation, is without merit. The facts of this case demonstrate that the child has lived off the Indian reservation since 1984 and has had little or no contact with either her natural Indian parents or the Tribe since that time. The Indian parents of the child have indicated no interest in the child and have demonstrated no ability to care for her.

When contacted regarding the serious illness of the child in 1991, the Tribe refused to provide any financial assistance to the custodial parents. The child has grown up in a non-Indian environment involving public schools and religious faith as well as complete integration in the community. She does not speak the Sioux language and does not practice its religion or customs.

■ The ICWA should not apply to a factual pattern where the Indian parents had no contact or custody with the child for over a decade. *See Matter of Adoption of D.M.J.*, *supra*. The ICWA was not applied to a case where the child had lived for seven years with its non-Indian mother since her divorce from the Indian father, and five years had passed without the father being involved. *In re: S.C.*. This case is very similar to the Alabama case of *S.A. v. E.J.P.*, in which it was held:

> The child may be an Indian child as defined in the act, by virtue of her biological father. However, since birth, she has either resided with her non-Indian mother or her non-Indian great-uncle except for a period of four weeks when she lived with her father and paternal grandmother. The mother and father were never married and never lived together. The father never supported the mother or the child financially. The child has had minimal contact with her father. She has no involvement in tribal activities or any participation in Indian culture. The evidence reflects that *the father has had only minimal contact* with the reservation. The father never exercised his parental responsibilities and never attempted to become a part of the child's life.
>
> This child was never a part of an Indian family environment. She has never been a member of an Indian family, has never lived in an Indian home, and has never experienced the Indian social and cultural world. To apply the ICWA to the facts of this case would be contrary to the congressional intent.

*S.A. v. E.J.P.*, 571 So.2d at 1189.

The decision of the circuit court was fully supported by the evidence pursuant to KRS 403.420, and its final conclusion that the best interests of the child would be served by continuing her custody with Leilani Rye is a proper decision. The real purpose of the ICWA would not be furthered by litigating this case in the tribal court pursuant to the Existing Indian Family Doctrine because the ICWA is not applicable here.

In enacting the Indian Child Welfare Act, Congress intended to stop the unnecessary breakup of Indian homes by the arbitrary removal of Indian children from existing Indian families by state court proceedings. However, it is very clear that Congress did not intend that the ICWA should be applied to totally divest state courts of appropriate jurisdiction to decide custody issues with respect to children who, although Indian by birth, have not lived for many years in an existing Indian family. Nor did Congress intend to interfere with the determination of the best interests of the child by a court in the state where such child lives.

The decision of the Court of Appeals is reversed and the judgment of the circuit court is reinstated.

STEPHENS, C.J., and GRAVES, KING, LAMBERT and STUMBO, JJ., concur.

BAKER, J., dissents by separate opinion.

BAKER, Justice, dissenting.

I respectfully dissent.

The issue in this case is not who should be entrusted with the custody of the Indian child, Kayla American Horse, but rather what court has jurisdiction to make that decision. All other things being equal, the Boyd Circuit Court would be the appropriate court and its decision made in compliance with the guidelines of KRS 403.270 would be affirmed.

Kayla American Horse is an Indian child and a member of the Standing Rock Sioux Tribe. Excepting her first eight months, this child, now thirteen years of age, has lived her entire life with Kim Weasel, her uncle and a tribal member, and his wife, Leilani Weasel. Significantly, the Standing Rock Sioux Tribal Court granted temporary custody to the Weasels on January 14, 1984. This order states in part:

That the Standing Rock Sioux Tribal Court retains jurisdiction over the above-named minor child and that Kayla American Horse be made a ward of this Court, and . . . .

That this Order will remain in effect until further notice of this Court.

The Boyd Circuit Court awarded custody of the child to Leilani Weasel, now Rye, and found that the provisions of the Indian Child Welfare Act (25 U.S.C. 1901 et seq.) did not apply and that it was in the best interest of the child to award custody to Leilani Weasel Rye. The Court of Appeals reversed holding the Indian Child Welfare Act governed and dictated that exclusive jurisdiction lies with the tribal court. The Court of Appeals further declared the "existing Indian Family doctrine" did not apply as the child had previously been adjudged a ward of the tribal court so as to invoke the exclusive jurisdiction of 25 U.S.C. § 1911(a).

The pertinent provision of the Indian Child Welfare Act reads:

§ 1911. Indian tribe jurisdiction over Indian child custody proceedings

(a) Exclusive jurisdiction

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

Congress in enacting the Indian Child Welfare Act made specific findings emphasizing the importance of maintaining the integrity of Indian tribes and protecting Indian children. 25 U.S.C. § 1901 provides in part:

(2) that Congress, through statutes, treaties, and the general course of dealing with Indian tribes, has assumed the responsibility for the protection and preservation of Indian tribes and their resources;

(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;

(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.

In House Report No. 95–1386 of the Interior and Insular Affairs Committee dated July 24, 1978 to accompany H.R. 12533 which was enacted as Public Law 95–608 (Indian Child Welfare Act of 1978) the Committee answered affirmatively the question "Does Congress have power to control the incidents of child custody litigation involving non-reservation Indian children and parents pursuant to the Indian commerce clause sufficient to override the significant State interest in regulating the procedure to be followed by its courts in exercising jurisdiction over what is traditionally a State matter?" That report evidences a great concern that Indian children not be separated from the Indian tribal family and that only by empowering tribal courts with exclusive custody could such a policy be promoted. See U.S.Code Cong. & Admin.News, 1978 at 7530–7568.

The relationship of Kayla American Horse as a ward of the Standing Rock Sioux Tribe has remained unchanged since January 12, 1984. In 1991 when Kayla suffered serious medical problems the Weasels appealed to the tribe for financial support. Neither the tribe nor the Bureau of Indian Affairs provided financial assistance. The record is silent as to whether this was because of a shortage of funds or a lack of will.

Nevertheless Kayla to this day remains a ward of her tribe. Moreover while she has not resided on the reservation since infancy her custodial father is a member of the tribe and her custodial mother is of Indian heritage. As pointed out by Justice Brennan in *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989), the exclusive jurisdiction of the tribal court cannot be defeated by simple expedients of giving birth off the reservation and placing a child for adoption while off the reservation.

It is very tempting for Kentucky courts which otherwise would have jurisdiction to ignore the exclusive jurisdiction vested by Congress in the tribal courts to adjudicate Indian child custody matters. Congress has chosen to place this responsibility with the Indian tribal court. With due respect for the primacy of federal law, Kentucky must transfer the custody determination of Kayla American Horse to the Standing Rock Sioux Tribal Court. The decision of the Court of Appeals should be affirmed.