**The PEOPLE of the State of Colorado, Petitioner-Appellee, In the Interest of J.L.G. and J.L.G., Children,**

**and Concerning D.L.G., Respondent-Appellant,**

**and**

**Oglala Sioux Tribe, Intervenor-Appellant.**

No. 82CA1109.

Colorado Court of Appeals, Div. IV.

Feb. 16, 1984.

Rehearing Denied March 29, 1984.

Pamela A. Gordon, Denver, for petitioner-appellee.

Lynn W. Lehmann, Denver, Guardian Ad Litem for children.

Bill Myers, Denver, for respondent-appellant.

No appearance for intervenor-appellant.

ENOCH, Chief Judge.

This case involves the foster care placement of two Sioux Indian children. Respondent, the mother, appeals the court's decision not to transfer jurisdiction of the case to the Oglala Sioux Tribe in Pine Ridge, South Dakota.

The basic issues before the court are the interpretation and application of certain provisions of the Indian Child Welfare Act, 25 U.S.C. § 1901 et seq. (1981 Supp.). Congress passed this Act with the express purpose of protecting the best interests of Indian children and promoting the stability

and security of Indian tribes and families. The Act establishes minimum federal standards for the removal of Indian children from their families and for their placement in foster or adoptive homes which will reflect the unique values of Indian culture. *See* 25 U.S.C. § 1902 (1981 Supp.).

The Act, when applicable, requires that the parent or Indian custodian and the Indian child's tribe be notified of any pending foster care placement or termination of parental rights proceedings involving Indian children, and of their right of intervention in such proceedings. *See* 25 U.S.C. § 1912(a) (1981 Supp.). In addition, the Indian custodian and the Indian child's tribe have the right to intervene at any point in such proceedings. *See* 25 U.S.C. § 1912(c) (1981 Supp.). Furthermore, where the Indian child is not domiciled or residing within the reservation of the child's tribe, the state court, in the absence of good cause to the contrary, must transfer such a proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe. *See* 25 U.S.C. § 1911(b) (1981 Supp.).

The mother here argues that the court did not apply the proper standard in determining whether good cause existed to deny transfer to the Indian children's tribe. We agree with the court's decision not to transfer jurisdiction to the tribe, albeit for different reasons. We conclude, as argued by the appellee, that the provisions of the Act are not applicable to this case.

In July 1978, the two children were voluntarily placed by their mother in a foster home in Denver. On August 8, 1978, a dependency and neglect petition and a motion for a protective order barring removal of the children without prior order of the court were filed in the Denver Juvenile Court. On September 7, 1978, the motion for a protective order was granted.

In November 1978, the Indian Child Welfare Act was passed, with an effective date of May 7, 1979. 25 U.S.C. § 1923 (1981 Supp.).

On June 12, 1979, believing the Act to be applicable, the trial court sent notice of this proceeding to the Sioux Tribe as provided for in § 1912 of the Act. On August 21, 1979, the mother admitted that the children were homeless, without proper care, or not domiciled with her, through no fault of her own. She also waived her right to trial. The adjudication portion of the dependency and neglect action was reserved for later hearing.

On December 11, 1979, a dispositional review hearing was held and the Sioux Tribe requested that jurisdiction be transferred to their Tribal Court at that time. On January 29, 1980, another dispositional review hearing was held and the mother objected to transfer of jurisdiction. Therefore, the court did not transfer jurisdiction to the Tribal Court pursuant to § 1911(b) of the Act, which specifically states that no transfer can occur if a parent objects.

After January 29, 1980, two more dispositional review hearings took place, and on November 11, 1980, the children were adjudicated dependent and neglected, nunc pro tunc January 29, 1980. In October 1981, the Sioux Tribe, having procured the mother's consent, reinstated its request to the court for jurisdictional transfer. On March 12, 1982, the court denied the jurisdictional transfer on the basis that good cause not to transfer had been shown pursuant to § 1911(b) of the Act.

To determine whether or not the Act applies, it is necessary to examine and analyze those provisions which govern the effective date of the Act. Section 1923 was designed for the orderly phasing in of the effect of the Act. It states that:

"[N]one of the provisions of [the Indian Child Welfare Act] ... shall affect a proceeding under state law for foster care placement ... which was initiated or completed prior to [May 7, 1979] but shall apply to any subsequent proceeding in the same matter or subsequent proceeding affecting custody or placement of the same child." 25 U.S.C. § 1923 (1981 Supp.).

The first issue presented by this provision is whether any actions taken by the state court constituted "foster care placement." Foster care placement is defined by the Act as "any action removing an Indian child from its parent for temporary placement in a foster home where the parent cannot have the child returned on demand, but where parental rights have not been terminated." 25 U.S.C. § 1903(1)(i) (1981 Supp.). Under this definition, foster care placement was initiated in this case on September 7, 1978, by the granting of the protective order which precluded the mother from removing the children from foster care without a court order. Since this action took place prior to May 7, 1979, the Act did not apply to the initial placement of the children in foster care.

However, since May 7, 1979, the mother has admitted portions of the dependency and neglect petition, the children have been adjudicated dependent and neglected, and several dispositional review hearings have taken place. Thus, the second issue is whether these actions are "subsequent proceedings in the same matter or subsequent proceedings affecting custody or placement of the same child," and therefore, were governed by the Act pursuant to § 1923.

The legislative history of the Act indicates that its provisions are to apply only "to any subsequent discrete phase of the same matter or with respect to the same child initiated after enactment." 6 *U.S. Code Cong. & Ad.News* 7548 (1978). The history includes the following example of such discrete phases:

> "For instance, if the foster care placement of an Indian child was initiated or completed prior to enactment and then, subsequent to enactment, the child was *replaced for foster care,* or an action for termination of parental rights was initiated, or the child was placed in a preadoptive situation, or he was placed for adoption, the provisions of the act will be applicable to those subsequent actions."

(emphasis supplied) 6 *U.S.Code Cong. & Ad.News, supra.*

In light of these examples, it is apparent that under the provisions of § 1923, Congress intended that the Act would not apply to situations where, as here, the foster care placement was initiated prior to the passage of the Act. It would, however, apply to those proceedings concerning the same child or children occurring after passage of the Act which involve a change in the physical location of the children or a change in the legal relationship existing between the parents and their children. In the case at hand, the subsequent proceedings did not replace the children in different foster care, did not terminate the mother's parental rights, and did not place the children in a preadoptive or adoptive situation. They only served to continue the foster care placement initiated prior to the enactment of the Act. *See Matter of T.J.D.,* 615 P.2d 212 (Mont.1980); *see also Bird Head v. Tail,* 209 Neb. 575, 308 N.W.2d 837 (1981); *Matter of R.N.,* 303 N.W.2d 102 (S.D.1981). Therefore, we hold that, under § 1923, the provisions of the Act are not applicable to this case and that the state court did not err in refusing to transfer jurisdiction to the Sioux Tribe.

The mother's other contentions are without merit.

Judgment affirmed.

HODGES and SILVERSTEIN, JJ.,* concur.

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).