The PEOPLE of the State of Colorado, DEPARTMENT OF SOCIAL SERVICES, Petitioner–Appellee,

In the Interest of A.E.V. and J.E.V., Jr., Children,

and Concerning,

The Northern Arapaho Tribe of the Wind River Reservation, Respondent–Appellant,

and

J.W. and R.W., Appellees.

No. 88CA0485.

Colorado Court of Appeals, Div. I.

Sept. 14, 1989.

Rehearing Denied Oct. 12, 1989.

Stephen H. Kaplan, Denver City Atty., and Claire Fish Mootz, Asst. City Atty., Denver, for petitioner-appellee.

Doris Burd, Denver, guardian ad litem.

Whiteing, Thompson & White, Jeanne S. Whiteing, Boulder, for respondent-appellant.

Law Office of Stephen J. Harhai, Stephen J. Harhai, Denver, for appellees.

Opinion by Judge TURSI.

The Northern Arapaho Tribe of the Wind River Reservation (Tribe) appeals the order denying its request to intervene in the adoption proceedings of A.E.V. and J.E.V. We affirm.

A.E.V. and J.E.V. are the children of a non-reservation Northern Arapaho mother and an Hispanic father. In 1984, shortly after J.E.V.'s birth, the children became the subject of a dependency and neglect action and were placed with the J.W. family (foster family). They have remained in the foster home since that time except for an unsuccessful five-month placement with a maternal aunt and uncle.

After notice from the juvenile court, the Tribe intervened in the state court dependency and neglect proceedings pursuant to the Indian Child Welfare Act, 25 U.S.C. § 1901, et seq. (1978) (ICWA). However, it later withdrew when tribal leaders refused to approve an amendment to a Tribal resolution which would have expanded membership eligibility to include children of enrolled Arapaho mothers. Subsequently, the mother died, and the father's parent-child relationship was terminated.

In preadoption proceedings that followed, another maternal aunt and uncle sought custody of the children. The couple were enrolled members of the Tribe and lived on the reservation. On May 5, 1987, the trial court ruled that, "beyond a reasonable doubt," the best interests of the children required placement with the foster family for adoption.

On May 16, 1987, the Tribe adopted a resolution which extended a limited membership to children of Northern Arapaho mothers. This limited membership status did not accord to such children the right to vote, hold office, or to participate in the per capita distribution of the tribal income. The children were officially accepted as such members of the Tribe on May 26, 1987.

On February 19, 1988, the Tribe, admitting it had no right of intervention under the ICWA, moved to intervene in the adoption proceedings as a matter of right pursuant to C.R.C.P. 24(a). The Tribe also argued that it had a due process right to notice of the adoption and an opportunity to be heard. The trial court denied the motion, finding that the children were placed for adoption prior to the date on which they became eligible for tribal membership and that, therefore, the Tribe was not entitled either to notice of the proceedings or to intervene in the proceedings. We agree.

C.R.C.P. 24(a) mandates that a party be allowed to intervene upon timely application:

"(1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

25 U.S.C. § 1911(c) (1978) of the ICWA allows Indian tribes to intervene at any point in a state court proceeding involving the foster care placement of, or the termination of parental rights to, an Indian child. However, the Tribe acknowledges that § 1911(c) does not authorize it to intervene in adoption proceedings. Nevertheless, it argues that it has an interest by virtue of the ICWA which is sufficient to support a right of mandatory intervention under C.R.C.P. 24(a)(2). We disagree.

The ICWA was enacted to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum federal standards for the removal

of Indian children from their families and the placement of such children in foster or adoptive homes which reflect the unique values of Indian culture. 25 U.S.C. § 1902 (1978).

The beneficent purposes of the Act apply to all custody proceedings involving Indian children. *In re Appeal in Maricopa County*, 136 Ariz. 528, 667 P.2d 228 (App. 1983). For purposes of the ICWA, a "child custody proceeding" includes "foster care placement," "termination of parental right," "preadoptive placement," and "adoptive placement." "Adoptive placements" are defined as "the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption." 25 U.S.C. § 1903(1)(iv) (1978). Hence, certain preferences are established under the ICWA for foster care and adoption placements.

The preferences are to be applied in accordance with the prevailing social and cultural standards of the tribal community and their order may be altered by Tribal resolution. Section 1915(c), U.S.C. (1978). In adoptive placements, absent good cause to the contrary, a preference is to be given to (1) a member of the child's extended family, (2) other members of the Indian child's tribe, or (3) other Indian families. 25 U.S.C. § 1915(c) (1978).

That the placement for adoption in this case occurred before the ICWA applied to these children is not disputed. However, the Tribe contends that, because the trial court had not entered a final decree of adoption at the time the children became members of the Tribe, all proceedings thereafter were subject to the ICWA. While we recognize that certain proceedings remained to finalize the adoption, no physical change in the location of the children was anticipated or made. Since no such change occurred and the fact that extensive custody hearings had been conducted prior to the ICWA's applicability to the children, we are unpersuaded that the proceedings held after the adoption placement fell within the category of "subsequent proceedings" subject to the ICWA. *See People in Interest of J.L.G.*, 687 P.2d

477 (Colo.App.1984). Also, we note that although the Tribe had notice of the dependency and neglect action and of the foster placement, it failed to change its membership requirements until several years after the placement and after the children had been placed for adoption with the foster family.

However, of paramount importance in our conclusion that intervention here was not necessary is the fact that the preferences in the ICWA were adequately presented to the court. The aunt and uncle seeking custody and contesting the adoption were represented by counsel and, relying on the preferences in the ICWA, participated fully in all of the placement proceedings. The determination of their suitability as adoptive parents involved a consideration and balancing of various cultural issues including whether life on the reservation would best meet the children's needs. Further, the Tribe's asserted interest in its maintenance and preservation as a political and cultural entity was fully presented to the state court.

Under such circumstances, we are satisfied that adequate representation of the Tribe's interests was provided by the existing parties. Further, the record amply justifies the implicit conclusion of the court that good cause existed to defeat the adoptive preferences of § 1915.

Consequently, we hold the Tribe has failed to establish an interest which would support intervention under C.R.C.P. 24(a)(1) or (2). *Cf. In re J.R.S.*, 690 P.2d 10 (Alaska 1984).

Order affirmed.

PIERCE and HUME, JJ., concur.