OPINION OF THE COURT
Albert J. Emanuelli, S.
ADOPTION PROCEEDING
In this contested adoption proceeding, (1) the Chickasaw Nation of Oklahoma (the Chickasaw Nation) moves to transfer this proceeding from this court to the tribal court of the Chickasaw Nation of Oklahoma (the tribal court) and in a separate motion, in the alternative, to intervene in the proceeding in *119 this court; (2) D.R, the biological father, cross-moves to dismiss the proceeding or, alternatively, to join in the motions made by the Chickasaw Nation; and (3) Adam “Anonymous” and Katherine “Anonymous” (the adoptive parents) move for a preliminary injunction restraining the parties from, inter alia, removing the child from this jurisdiction. All four motions are decided herewith.
I. THE FACTS
On December 18, 1997, the adoptive parents placed an advertisement in a Lawton, Oklahoma newspaper called “The Thrifty Nickel”. The advertisement stated that the adoptive parents were looking to share their life with a baby and set forth a telephone number by which they could be contacted.
Thereafter, responding to the advertisement, 27-year-old M.S., a resident of Mill Creek, Oklahoma, called the adoptive parents. M.S. was married but was separated from her husband, G.S., when Baby Girl S. was conceived. M.S. has stated that the biological father of Baby Girl S. was D.R, not G.S., her husband. M.S. is alleged to be 13/32 degree Chickasaw Indian and does not reside on a reservation. D.R. is not a Native American.
On February 6, 1998, M.S. gave birth to Baby Girl S.
On February 10, 1998, M.S. and G.S. gave judicial consents before the Honorable Farrell M. Hatch, Judge of the District Court of Bryan County, Oklahoma (the Oklahoma court), to the adoption of Baby Girl S. by the adoptive parents. M.S. and G.S. also had executed extrajudicial consents to the adoption.
On February 18, 1998, the Interstate Compact placement request issued. Contemporaneously therewith, Baby Girl S. was sent to New York.
II. THE PROCEDURAL HISTORY
On February 23, 1998, by certified mail, “return receipt requested”, counsel for the adoptive parents notified the Chickasaw Nation that M.S. had decided to give her daughter up for adoption. The letter was signed for, and the return receipt was filed in this court. No response was received.
On March 2, 1998, a petition for adoption was filed with this court by the adoptive parents.
On November 4, 1998, a citation was issued by this court to D.R. because M.S. had named D.R. in her judicial consent before the Oklahoma court as the biological father and thereafter the adoptive parents did so in the adoption petition.
*120 On November 30, 1998, the attorneys for D.R. filed a notice of appearance in this court.
On January 26, 1999, the attorney for the Chickasaw Nation filed a notice of appearance in this court and a motion to transfer this proceeding to the tribal court and, in the alternative, a motion to intervene in this proceeding.
On February 3, 1999, D.R. filed a motion to dismiss the proceeding, alleging that M.S.’s consent to the adoption of Baby Girl S. made in the Oklahoma court was invalid.
On or about March 5, 1999, D.R. filed a motion in the Oklahoma court seeking emergency custody, to vacate the consent given by M.S., and to invalidate the interstate placement order. D.R. also filed a motion to intervene in the proceeding in the District Court. Both of these motions were made returnable before the District Court on March 16, 1999.
On March 15, 1999, the adoptive parents moved by order to show cause in this court for an injunction against D.R. and the Chickasaw Nation to prevent them from taking any action to remove Baby Girl S. from the jurisdiction of this court. The order to show cause, which contained a temporary restraining order, was signed and served on counsel for the Chickasaw Nation and counsel for D.R. on that date and was made returnable on March 24, 1999.
In contravention of this court’s March 15, 1999 order, D.R. pursued his motions in the Oklahoma court. It is this court’s understanding from the litigants that, on March 16, 1999, the Oklahoma court issued an oral ruling staying all of the proceedings before that court pending the outcome of the proceedings in this court.
On April 5, 1999, M.S. appeared before this court and again gave her judicial consent to the adoption of her daughter by the adoptive parents. Prior to M.S.’s appearance, the court appointed an attorney to represent her interests, and M.S. acknowledged, in the presence of her attorney, that she was satisfied with her counsel. Further, the court did not specifically determine at that time whether the Indian Child Welfare Act of 1978, 25 USC § 1901 et seq. (the ICWA), applied to this proceeding. However, anticipating that the court could ultimately determine that the ICWA applied, judicial consent was taken in accordance with 25 USC § 1913 (c) because the ICWA requires that the parent be provided with the higher of the State or Federal standard applicable to the protection of her rights (see, 25 USC § 1921). 25 USC § 1913 (c) afforded *121 M.S. broader protection of her rights to her daughter than the New York State counterpart (Domestic Relations Law § 115-b). That is because the ICWA provision allows M.S. to revoke her consent up until the time that the final order of adoption is entered while Domestic Relations Law § 115-b would make M.S.’s judicial consent irrevocable at the time of its execution.
III. THE APPLICABILITY OF THE INDIAN CHILD WELFARE ACT OF 1978
Before the motions can be determined, the court must decide whether the ICWA applies to this proceeding.
(A) The Legislative Purpose of the ICWA
“Surveys conducted in 1969 and 1974 by the Association on American Indian Affairs showed that 25 to 30 percent of Indian children were being separated from their families and that fully 85 to 90 percent of [those] children were being placed in non-Indian foster care, adoptive homes, or institutions.” (Matter of Crews, 118 Wash 2d 561, 567, 825 P2d 305, 308 [1992], citing HR Rep No. 1386, 95th Cong, 2d Sess 9, reprinted in 1978 US Code Cong & Admin News 7530, 7531.) Indian homes were being broken up by the arbitrary removal of Indian children from existing Indian families by State court proceedings (see, Rye v Weasel, 934 SW2d 257 [Ky 1996]).
Congress was presented with evidence that this was occurring because of “outright bias against Indians by State social workers as well as the more subtle problem of social workers untutored in the ways of Indian family life mistaking methods of raising and disciplining children with an extended Indian family for excessive permissiveness, neglect, or abandonment” (Matter of New York City Dept. of Social Servs. [Oscar C., Jr.] v Oscar C., 192 AD2d 280, 284, Iv denied 82 NY2d 660, citing HR Rep No. 1386, 95th Cong, 2d Sess 9, reprinted in 1978 US Code Cong & Admin News 7531-7532; see also, In re Alexandria Y., 45 Cal App 4th 1483, 53 Cal Rptr 2d 679, review denied [1996]; Matter of Crews, supra).
The legislative history of the ICWA — and the statute by its terms — reflect that Congress’s enactment of the statute was designed to insure the “maintenance of the family and tribal relationships existing in Indian homes and to set minimum standards for the removal of Indian children from their existing Indian environment.” (See, Matter of Baby Boy L., 231 Kan 199, 205-206, 643 P2d 168, 175 [1982]; see also, 25 USC § 1902; Mississippi Band of Choctaw Indians v Holy field, 490 US 30 *122 [1989]; Matter of New York City Dept. of Social Servs. [Oscar C., Jr.] v Oscar C., supra; Matter of S.C., 833 P2d 1249 [Okla 1992].)
• The ICWA addresses these concerns by giving Federally recognized American Indian tribes certain rights with regard to children of Indian heritage (see, In re Morgan, 1997 WL 716880, 1997 Tenn App LEXIS 818 [Tenn Ct App, Nov. 19, 1997, Lillard, J.]).
(B) The Existing Indian Family Doctrine
After the enactment of the ICWA, some State courts adopted what has come to be known as the “existing Indian family doctrine”. The “ ‘existing Indian family’ doctrine * * * precludes application of the ICWA when the Indian child’s parent * * * ha[s] not maintained a significant social, cultural, or political relationship with * * * her tribe” (Matter of Catholic Charities & Community Servs., 942 P2d 1380, 1382 [Colo]) or when the Indian child has never lived in an Indian environment (see, e.g., Matter of Baby Boy L., supra). Application of the doctrine requires resolution of factual issues (Matter of Catholic Charities & Community Servs., supra). The courts adopting the “existing Indian family doctrine” have held that the ICWA is inapplicable even though facts were presented which might otherwise establish threshold jurisdiction under the statute (see, Rye v Weasel, supra).
In Matter of Baby Boy L. (supra), the Kansas Supreme Court held that the ICWA did not apply to a proceeding brought by an Indian father to vacate an adoption decree. In noting that the enactment of the ICWA was designed to maintain Indian family and tribal relationships and to prevent the removal of Indian children from existing Indian family units with the resultant breakup of the Indian family, the court held that the ICWA was not intended to dictate the removal from its adoptive family of a child born out of wedlock “who has never been a member of an Indian home or culture” (Matter of Baby Boy L., 231 Kan, at 206, 643 P2d, at 175).
In Matter of T.R.M. (525 NE2d 298 . [Ind 1988], cert denied sub nom. J.Q. v D.R.L., 490 US 1069), the Indiana Supreme Court denied an Indian mother’s habeas corpus petition seeking the return of her child after she had given her consent to the adoption. The court did not apply the ICWA, finding that “where the child was abandoned to the adoptive mother essentially at the earliest practical moment after childbirth * * * [it could not] discern how the subsequent adoption proceeding constituted a ‘breakup of the Indian family.’ ” (Matter of T.R.M., *123 525 NE2d, at 303; see also, In re Hampton v J.A.L., 658 So 2d 331, 334-335 [La 1995], cert denied 517 US 1158 [after “exhaustive review of jurisprudence on this issue, the Act, and its stated purpose and legislative history, we are convinced that Congress intended the Act apply only in situations involving the removal of children from an existing Indian family and Indian environment”]; In Interest of S.A.M., 703 SW2d 603 [Mo 1986] [ICWA did not apply to a proceeding to terminate the parental rights of an Indian biological father because, among other reasons, there was no existing Indian family which was being broken up].)
In Matter of Crews (supra), the Washington State Supreme Court, sitting en banc, did not apply the ICWA to a case where the Indian biological mother filed a petition to vacate an order terminating her parental rights. The court wrote: “we do not find an existing Indian family unit or environment from which [the child] was removed or to which he would be returned. To apply ICWA in this specific situation would not further the policies and purposes of ICWA.” Matter of Crews, 118 Wash 2d, at 569, 825 P2d, at 310; see also, Matter of S.C., 833 P2d 1249, 1255, supra, citing S.A. v E.J.P., 571 So 2d 1187 [Ala 1990] [“ ‘existing Indian family’ doctrine is the view which best conforms to the purposes and policies of the ICWA”].)
In Matter of S.C. (supra), the Supreme Court of Oklahoma stated that the “existing Indian family doctrine” was contemplated by Congress in that the aim of the statute was to preserve the existing Indian family. There, the Oklahoma court found further support for the “existing Indian family doctrine” in events that occurred after the enactment of the ICWA. The court wrote: “Our interpretation is supported by recent events in the Congress. In 1987 amendments were presented by the Senate Committee on Indian Affairs. These proposed amendments were occasioned by courts’ refusing to apply the ICWA to situations like this one. The amendments, if enacted, would have made application of the ICWA mandatory regardless of whether the child had ‘previously lived in Indian country, in an Indian cultural environment or with an Indian parent.’ See S.1976, 100th Cong., 1st Sess., 133 Cong. Rec. S18532, S18533 (daily ed. Dec. 19, 1987) (proposed amendment to Section 1903 (1)). However, the amendments never came out of the Senate Committee, and at the time of this writing, have not been presented again. Congress, being aware of * * * this Court’s decision in In re D.M.J. [741 P2d 1386], as well as decisions from other states using similar reasoning, has refused to change the *124 statutory language to do away with this interpretation.” (Matter of S.C., 833 P2d, at 1255.)
In Rye v Weasel (934 SW2d 257, supra), the Supreme Court of Kentucky rejected the exclusive jurisdiction argument of the tribe under the ICWA and awarded custody to the foster mother because the court found that the facts warranted the application of the “existing Indian family doctrine”. There, the Indian child had been born on the reservation but had been voluntarily placed with the foster family at eight months of age and continued to live there for nine years. In determining to apply the doctrine, the court wrote: “We are persuaded by the opinion of the Supreme Court of Oklahoma in [Matter of] S.C. * * * Oklahoma, which contains a large Indian population and consequently one of the states most often presented with this vexing problem, has been one of the leading states in developing this doctrine.” (Rye v Weasel, 934 SW2d, at 261.)
The court further noted that Congress had not altered the use by the courts of the “existing Indian family doctrine” and wrote: “Obviously, the U.S. Congress is aware of the Existing Indian Family Doctrine as used by Oklahoma and other courts and with such knowledge has specifically refused to take legislative action to alter that interpretation. We are persuaded that the true intent of Congress is not to disturb situations such as presented in this case, where the Indian child is fully integrated in a non-Indian family.” (Rye v Weasel, supra, at 262.)
Our Court of Appeals has recognized the failure of the Legislature to change a known judicial interpretation of a statute as evidence of legislative approval of the interpretation (see, Matter of Alonzo M., 72 NY2d 662). Therefore, as stated by the Supreme Courts of Oklahoma and Kentucky, Congress’s failure to enact the 1987 amendments which would have eliminated the “existing Indian family doctrine” can certainly be interpreted as supporting its continued application.
Based on the above-cited case law, it is apparent that there is continued and extensive judicial support for the application of the “existing Indian family doctrine”.
It should be noted that some courts reject the “existing Indian family doctrine”, considering it a judicially created exception contrary to the plain language of the ICWA (see, Matter of Child of Indian Heritage, 111 NJ 155, 543 A2d 925 [19881; In re S.B.R., 43 Wash App 622, 719 P2d 154 [1986]). In rejecting the doctrine, these courts have relied on the United States Supreme Court’s decision in Holy field (490 US 30, supra; *125 see, e.g., Matter of T.N.F., 781 P2d 973 [Alaska 1989], cert denied sub nom. Jasso v Finney, 494 US 1030; Matter of Baby Boy Doe, 123 Idaho 464, 849 P2d 925 [1993], cert denied sub nom. Swenson v Oglala Sioux Tribe, 510 US 860).
The decision in Holy field (supra), however, is not inconsistent with the application of the “existing Indian family doctrine”.
Holy field (supra) concerned the adoption of twin Indian children born out of marriage whose parents had resided on a reservation until shortly before the time of the birth of the infants. The parents left the reservation specifically to give birth to avoid the children being placed there. The issue before the Court was the construction of 25 USC § 1911 (a), the ICWA provision regarding the exclusive jurisdiction of the tribal court over child custody proceedings where the child resides or is domiciled on the reservation. The Court held that the children were domiciled on the reservation within the meaning of the ICWA’s exclusive tribal jurisdiction because the domicile of an Indian child is that of the mother if the child is born out of marriage and Federal law preempts State law as to the definition of domicile. Other courts have also found the Holyfield decision limited in its application (see, e.g., Rye v Weasel, supra; Matter of S.C., supra; Matter of Crews, 118 Wash 2d 561, 825 P2d 305, supra; Matter of T.S., 245 Mont 242, 801 P2d 77 [1990], cert denied sub nom. King Is. Native Community v Montana Dept. of Family Servs., 500 US 917).
The court is persuaded that the ICWA was not intended to apply in circumstances such as tliese, where: (1) the mother does not live on the reservation, has voluntarily consented to the adoption of her daughter who she relinquished at birth and objects to the intervention of the tribe; (2) the putative father is non-Indian, has not demonstrated any connection to the tribe or to the Indian way of life; and (3) the infant has lived with her prospective adoptive parents throughout these proceedings.
Additionally, M.S. has stated that her extended family consists solely of her mother and her aunt, both of whom are elderly and have health problems; that she did not want her daughter adopted by a Chickasaw tribe member or any other Native American; that she wanted Baby Girl S. to grow up in a larger community where no one would know that she was born out of wedlock; and that she felt strongly that the baby belonged with the adoptive parents and would be educated as to her heritage by them.
*126 The court concludes that the application of the ICWA would not further the policies behind it or be in the best interests of Baby Girl S. However, even though the court has determined that the ICWA does not apply, M.S.’s right to revoke her consent will continue up until the time the final order of adoption is entered since that representation was made to M.S. at the surrender hearing by this court.
Further, because this court is aware of the important purposes of the ICWA and considering the impact of the decision and the fact that the application of the “existing Indian family doctrine” in this State appears to be one of first impression, the court also will evaluate the motions as if the ICWA applied.
IV. THE MOTIONS
(A) Transfer of Jurisdiction
(i) The Contentions of the Parties
The Chickasaw Nation alleges that the proceeding should be transferred to the tribal court under 25 USC § 1911 (b) because there was no “good cause” for this court to retain jurisdiction.
The adoptive parents filed answering papers, essentially stating that the motion must be denied because M.S. objects to the relief.
(ii) The Merits
In light of the determination that the ICWA does not apply to this proceeding and in view of the fact that this court has jurisdiction over this adoption (see, Family Ct Act § 641; Domestic Relations Law §§ 75-b, 115 [2]), the Chickasaw Nation’s motion to transfer is denied.
Moreover, even if the court were to determine that the ICWA applied, the motion would nevertheless be denied.
25 USC § 1911 (a) provides for tribal court jurisdiction of “any child custody proceeding” involving reservation-domiciled children and wards of the tribe. Concurrent jurisdiction exists with State courts over children not domiciled on the reservation (25 USC § 1911 [b]). Cases involving these children should be transferred to the tribal court unless certain exceptions apply. 25 USC § 1911 (b) provides: “In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child’s tribe, the court, in the absence *127 of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent [emphasis added], upon the petition of either parent or the Indian custodian or the Indian child’s tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.” M.S. has filed an affidavit in this court which clearly stated that she objected to the transfer of this proceeding to the tribal court. Therefore, under the ICWA, the application would have been denied (see, e.g., Matter of Baby Boy L., 231 Kan 199, 643 P2d 168, supra). M.S.’s objection would have made a determination as to the issue of “good cause”, as raised by the Chickasaw Nation, unnecessary.
Notably, while the court need not decide the issue, several courts have held that 25 USC § 1911 (b) applies only to “foster care placement” and “termination of parental rights” proceedings as defined in 25 USC § 1903 (1) and not to preadoptive and adoptive placement proceedings because “Congress chose to limit transfer authority to only two of the four proceedings included in the definition of ‘child custody proceeding.’ ” (See, e.g., Matter of J.B., 900 P2d 1014, 1016 [Okla 1995].) The Oklahoma Court of Appeals, in Matter of J.B. (at 1016-1017), wrote:
“The construction urged * * * renders Congress’ use of the phrases ‘foster care placement’ and ‘termination of parental rights’ in § 1911(b) a nullity, along with the distinctions between those terms in the definitions in § 1903(1). We must interpret § 1911(b) and § 1903(1) so as to render every word and sentence operative * * * We hold transfer authority is limited to proceedings for ‘foster care placement’ and ‘termination of parental rights’ as § 1903(1) defines those terms * * *
“Virtually every proceeding for a ‘preadoptive placement’ or an ‘adoptive placement’ will evolve from a proceeding for ‘foster care placement’ or ‘termination of parental rights.’ The Tribe’s interpretation would render Congress’ specific decision to omit ‘preadoptive placement’ and ‘adoptive placement’ proceedings from the ambit of § 1911(b) futile and meaningless.”
(B) Intervention
(i) The Contentions of the Parties
The Chickasaw Nation moved, in the alternative, to intervene in this proceeding under ICWA, 25 USC § 1911 (c), if its motion to transfer the proceeding to tribal court was denied. It also reserved the right to intervene under CPLR 1012 and/or 1013 in the event that the motion under the ICWA was denied.
*128 The adoptive parents initially opposed the request to intervene stating that the ICWA was inapplicable and that the relief was barred by laches since the Chickasaw Nation had been notified in February 1998 about the adoptive parents’ intention to adopt Baby Girl S., and the tribe did not appear in the proceeding until January 26, 1999. Subsequently, however, the adoptive parents have withdrawn their opposition to intervention by the Chickasaw Nation.
(ii) The Merits
Because this court has found that the ICWA is inapplicable to this proceeding, the motion to intervene in accordance with the ICWA is denied. However, in the interest of conserving judicial resources and those of litigants and in the exercise of this court’s discretion, because the Chickasaw Nation has sufficient interest in this proceeding, it will be permitted to intervene pursuant to CPLR 1013 (see generally, In re Baby Girl A., 230 Cal App 3d 1611, 282 Cal Rptr 105, review denied [1991]).
If this court was to decide this motion under the ICWA, the result might not be the same. 25 USC § 1911 (c) provides: “In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child’s tribe shall have a right to intervene at any point in the proceeding.”
As with the construction of 25 USC § 1911 (b), some courts have determined that 25 USC § 1911 (c) does not apply to permanent adoptive placements because the statute specifically states its applicability only to proceedings for the “foster care placement” of an Indian child or the “termination of parental rights” to an Indian child {see, e.g., In re Baby Girl A., supra [tribe could not intervene as a matter of right in an ancillary proceeding intended to assist in completing a voluntary adoptive placement]; People, Dept. of Social Servs. in Interest of A.E.V., 782 P2d 858 [Colo 1989] [tribe acknowledged that 25 USC § 1911 (c) did not authorize it to intervene in adoption proceedings]; Matter of Appeal in Maricopa County Juvenile Action No. A-25525, 136 Ariz 528, 667 P2d 228 [tribe not specifically granted intervention under 25 USC § 1911 (c)]).
(C) Dismissal of the Proceeding
(i) The Contentions of the Parties
D.R. alleges that the adoption proceeding should be dismissed because the judicial consent given by M.S. in the District Court *129 violated the ICWA because it was given six days too early under the statute.
In opposition, the adoptive parents contend, among other things, that D.R. has no standing to invoke the ICWA; that he may not use the mother’s consent provision, which was designed to protect her, as a sword in this proceeding; and that, in any event, M.S. has ratified her consent to the adoption over the course of the past year.
(ii) The Merits
Even if the ICWA applied to this proceeding, this motion would be denied as moot since, on April 5, 1999, 14 months after the birth of Baby Girl S., M.S. came before this court and affirmed her consent to the adoption of her daughter by the adoptive parents.
While the court need not decide the issue, even assuming, arguendo, that M.S. had not reexecuted her consent and the ICWA applied to this proceeding, there is nothing in the statute or the case law which would support D.R.’s attempt to use the waiting period in the consent provision of the statute as a sword to vitiate M.S.’s consent when that provision was undoubtedly designed to protect her as the individual giving the consent.
(D) The Injunction
(i) The Contentions of the Parties
The adoptive parents moved for a preliminary injunction, enjoining D.R. and the Chickasaw Nation and anyone acting on their behalf from “removing or taking any action to effect the removal” of Baby Girl S. from their custody and from the jurisdiction of the court pending a determination by this court as to proper custody of the infant.
The attorney for the Chickasaw Nation argues, among other things, that the adoptive parents unlawfully removed the child from Oklahoma and that the preliminary injunction would be overbroad in that it would interfere with his ability to adequately represent the Chickasaw Nation since it would bar an appeal or a collateral attack in Federal court of any of this court’s orders and subject him to malpractice liability.
D.R. essentially has adopted the position of the Chickasaw Nation with respect to this motion.
*130 (ii) The Merits
This court has jurisdiction over this adoption proceeding (see, Family Ct Act § 641; Domestic Relations Law § 75-d), and the venue is proper in this county (see, Domestic Relations Law § 115 [2]).
This is an application to enjoin a party in the action from prosecuting an action or some phase of it elsewhere. The court has the authority to grant injunctive relief in order to protect the integrity of its jurisdiction and to prevent the parties from engaging in duplicative litigation (see, e.g., Paramount Pictures v Blumenthal, 256 App Div 756, appeal dismissed 281 NY 682; Matter of Johnson, 142 Misc 2d 388, affd 145 AD2d 388). The decision to stay a party from prosecuting a related proceeding in another forum lies within the discretion of the court (see, e.g., Matter of Johnson, supra). However, such a remedy is an extraordinary one and should be rarely granted (see, Paramount Pictures v Blumenthal, supra).
Upon a careful review of the record, including those documents which demonstrate that, after appearing in this court, D.R. may have engaged in forum-shopping by seeking relief with respect to Baby Girl S. in the Oklahoma court, the preliminary injunction is granted to the extent that D.R. and the Chickasaw Nation or anyone acting on their behalf are enjoined from taking any action to interfere with the jurisdiction of this court pending a determination by this court as to the proper custody of Baby Girl S.
Contrary to the argument of the Chickasaw Nation, this court’s temporary restraining order did not, and any future order will not, interfere with the litigants’ pursuit of their rights through lawful appeals and any remedies which they may have available to them in the Federal courts. Further, the Interstate Compact placement request appears valid on its face, and there is nothing in the record which indicates that Baby Girl S. is unlawfully present in this jurisdiction.