**D.W.H., Appellant,**

**v.**

**CABINET FOR HUMAN RESOURCES Commonwealth of Kentucky, G.W.H. and J.H., Appellees.**

**G.W.H., Appellant,**

**v.**

**CABINET FOR HUMAN RESOURCES, Commonwealth of Kentucky D.W.H. and J.H., Appellees.**

Court of Appeals of Kentucky.

March 28, 1986.

Homer Parrent, III, Louisville, for appellant, D.H.

Robert J. Stauble, Louisville, for appellant, G.H.

Bixler W. Howland, Guardian Ad Litem, Louisville, for appellee, J.H.

R. Hughes Walker, Gen. Counsel, W. Kimble Moore, Jr., Staff Atty., Frankfort, for appellee, Cabinet for Human Resources.

Before CLAYTON, LESTER and REYNOLDS, JJ.

LESTER, Judge.

These are consolidated appeals by the parents from an order involuntarily terminating their parental rights and placing their minor child in the care and custody of the Cabinet of Human Resources.

Because the father, G.W.H., is a member of the Cheyenne River Sioux Indian tribe, this action was tried, by agreement of all the parties, pursuant to the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 *et seq.*) [hereinafter referred to as the Act].

The specific provision of the Act which is at issue in these appeals provides as follows:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, *supported by evidence beyond a reasonable doubt,* including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. (25 U.S.C. § 1912 (f)) (emphasis added).

There is no real dispute that this Act requires a more stringent standard of proof for termination of Indian parental rights than the clear and convincing evidence standard which is applied to all other state termination proceedings. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *N.S. v. C. and M.S.,* Ky., 642 S.W.2d 589 (1982). In adopting this Act, Congress specifically found that the states had often failed to recognize essential tribal relations and cultural and social standards prevailing in Indian families, resulting in a disproportionately high percentage of Indian children being removed from their families. 25 U.S.C. § 1901. Because of the relatively small Indian population in this state, this is a case of first impression in Kentucky.

Both parents maintain that the Commonwealth failed to establish beyond a reasonable doubt that their continued custody of the child was likely to result in serious emotional or physical damage to the child. The trial court found that the state had met this stringent standard of proof.

The history of G.W.H. and D.W.H. has been sporadic at best. The parties were married when the child was born in 1979 and, while they have been separated for several years, are still legally married. They apparently have another older child together, although neither appellant has seen or supported that child in at least two years. Although originally from the Louisville area, D.W.H. and G.W.H. moved to South Dakota in 1979. When the child,

J.H., was three months old, the father was sent to prison. He was released in 1982 but has been arrested on three occasions since his release. He admitted to physical abuse of the mother, D.W.H., a prior heavy alcohol addiction, a previous suicide attempt, and acknowledged that he has no place to keep the child, but wants his uncle in South Dakota to have custody of J.H.. He has had a number of short-term jobs, has failed to maintain regular visitation, has made no support payments, and has refused to utilize the services or programs offered by the Cabinet to prevent the breakup of the family.

While G.W.H. was in prison in South Dakota, D.W.H. lived in a number of homes, either taking the child or leaving her behind with relatives. On two separate occasions in that state, the Department of Social Services took temporary custody of J.H. due to the mother's neglect. D.W.H., like her husband, has been in trouble with the law, has changed jobs and residences, as well as live-in boyfriends, quite frequently, has a history of alcohol abuse and has attempted suicide on more than one occasion. While she has exercised her visitation rights with J.H., she has failed repeatedly to follow up with counseling or participate in any of the programs offered by the Cabinet. There was testimony relating to one incident of medical neglect in 1982 which resulted in three days hospitalization of the child for blisters, infections, vaginitis and impetigo. The child has primarily been in foster care since that time.

The trial court in this case entered an order which contained extensive and thorough findings of fact, all of which are amply supported by the record. In so doing, the court below correctly applied the provisions of the Indian Child Welfare Act, requiring proof beyond a reasonable doubt rather than the general state standard of clear and convincing evidence.

After reviewing all of the evidence and the lower court's findings, it is our opinion that the trial judge found the cumulative effect of all the various factors constituted proof beyond a reasonable doubt that continued custody of J.H. by either G.W.H. or D.W.H. was likely to result in serious emotional and/or physical damage to the child. When taken alone, the one incidence of medical neglect, the alcohol abuse, the suicide attempts, or the unstable home environment may not be enough to meet the stringent standard of proof. However, in light of all the evidence, when considered together with the testimony of qualified expert witnesses, we believe there was sufficient evidence to support the judgment of the trier-of-fact.

As did the circuit court, we have examined numerous cases of other jurisdictions applying the Indian Child Welfare Act. The great majority of those decisions have held that the state met its burden of proof beyond a reasonable doubt that termination was justified, particularly where, as here, all other rehabilitative programs and efforts had proved unsuccessful. *People in Interest of P.B.*, S.D., 371 N.W.2d 366 (1985); *D.E.D. v. State*, Ak., 704 P.2d 774 (1985); *People in Interest of C.A.J.*, Colo. App., 709 P.2d 604 (1985); *Matter of Welfare of W.R.*, Minn.App., 379 N.W.2d 544 (1985).

As the trial court noted in its detailed findings:

They both are still living with whomever will take them in. They have failed to establish any type of stable home environment. They have refused to undergo any counseling.... We have a situation where foster care, in which J.H. now finds herself, is the only stable environment in which this child has ever lived. The parents of this child appear to be unable to provide for themselves, let alone provide a home for their child.

While we strongly believe that termination of parental rights is a drastic step that should not be taken absent the failure of less permanent alternatives, this appears to be a case where anything less will not be in the best interests of this child.

The appellants also contend that the Act's requirement of "qualified expert witnesses" was not met in this case by the

social workers who testified on behalf of the Cabinet. Counsel for appellants argue that an insight or expertise into Indian customs or practices is required by the spirit of the 1978 Act.

Again, we have looked to the law of other states interpreting the Act and conclude that, under those holdings, the Cabinet's witnesses were qualified experts. The failure of these experts to possess special knowledge of Indian life was not fatal and the court did not abuse its discretion in admitting testimony of "professional persons having substantial education and experience in the area of his or her specialty." Federal Register Vol. 44, No. 228, 11/26/79, p. 67593; *Matter of J.L.H. and P.L.L.H.*, S.D., 316 N.W.2d 650 (1982); *State ex rel. Juvenile Dept. of Lane Co. v. Tucker*, 76 Or.App. 673, 710 P.2d 793 (1985).

In conclusion, based on all the evidence, we believe the Cabinet for Human Resources has met its burden of proof required by 25 U.S.C. § 1912 (f) to terminate parental rights by producing evidence beyond a reasonable doubt, including the testimony of qualified expert witnesses, that custody of the child, J.H., by either of the parents is likely to result in serious emotional or physical damage to the child.

Accordingly, the judgment is affirmed.

All concur.