This is a child dependency case.
After an ore tenus hearing the Juvenile Court of Clay County found that Michelle, Christina, George Ann, William, and Phillip Long, ages 13, 12, 9, 8, and 4, respectively, are dependent children. Temporary custody of said children was awarded to the Department of Human Resources (DHR). Both mother and father appeal. We affirm.
The father and the five minor children are Indians and are members of the Wyandotte Tribe, which was notified of the proceedings pursuant to 25 U.S.C.A. § 1912(a) (West 1983), the Indian Child Welfare Act (ICWA). The Wyandotte Indian Tribe, by letter, waived its jurisdiction in the matter and its right to appear.
The record reveals a history of problems with this family as early as 1976. The mother and father have a lengthy history of marital difficulties, which have resulted in at least three separations and reconciliations. The oldest daughter of the father from a previous marriage committed suicide while residing with the family. While residing in Mississippi with the mother, the children were adjudged dependent by the Mississippi court system. Some of the children were later returned to the parents after a reconciliation. Two children who are not part of this dependency hearing remain in Mississippi and refuse to return to the family home. Another minor child, not part of this proceeding, has been adjudged dependent and is currently in temporary *Page 135 
care. The oldest daughter of the mother from a previous marriage testified to numerous accounts of physical and emotional abuse of the children by the father. The mother had stated in previous reports to DHR that the reason for the separations was the abusive conduct of the father toward her and the children. One child currently exhibits abnormal sexual behavior, one alcohol abuse, and three of the children are behind in school, despite having normal I.Q.'s.
Just before the reconciliation of the mother and father, the mother had reached the point where she was unable to control the children or to properly care for them, and the children were placed with various friends and relatives. DHR then filed a petition for temporary care and custody of the children.
After a lengthy hearing, the trial court concluded the minor children had been subjected to abusive treatment, both physically and emotionally. This abusive treatment runs in cycles consistent with the instability of the marriage of the mother and father. The court found that because of this cyclical pattern the abusive treatment was not likely to change in the future without professional help. The court expressed concern in its written order for the children's emotional and mental well-being. The court further found that the father has abused the children and the mother is unable or unwilling to moderate the father's control and discipline of the children, nor could she control and discipline the children herself.
The trial court adjudged the minor children dependent under section 12-15-1(10), Code 1975, and noted that the children are in a clear and present danger of suffering lasting permanent damage.
The mother and father argue on appeal that the trial court erred to reversal by failing to follow the pertinent provisions of the Indian Child Welfare Act (ICWA). The ICWA provides in part as follows:
"§ 1912. Pending court proceedings
". . . .
 "(d) Remedial services and rehabilitative programs; preventive measures
 "Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
 "(e) Foster care placement orders; evidence; determination of damage to child
 "No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."
25 U.S.C.A. § 1912 (West 1983).
The parents' first contention is that DHR failed to actively provide remedial services and rehabilitative programs to prevent this family's breakup as required by section 1912(d). We disagree.
The record clearly reveals that DHR offered or provided numerous services, i.e. day care services for the children, assistance in locating housing, foster care, legal services referral, clothing and food orders, counseling sessions, and mental health referrals, which were either rejected out of hand or were never completed by the parents. These efforts by DHR extended over a period of several years. The record sufficiently reveals that DHR made every effort to prevent the breakup of the family. Moreover, it should be noted that these parents still have an opportunity to regain the custody of their children, i.e. the court gave DHR temporary custody of the children with the admonition that it afford the parents every possibility of the return of their children.
The parents' final contention is that the trial court erred in holding that DHR had presented clear and convincing evidence, including the testimony of expert witnesses, that the continued custody of the children *Page 136 
by the parents would likely result in serious emotional or physical damage to the children. Again, we disagree.
The parents begin their argument by suggesting that DHR failed to present a witness qualified to give an opinion regarding custody of the children as required by25 U.S.C.A. § 1912(e) (West 1983).
DHR's expert witness testified that she had received training in testing ethnic groups, including American Indians. She also taught classes in a Chicago school attended by Indian children.
It has been held that Congress intended the expert witness in section 1912(e) to refer to a person with significant knowledge of Indian culture. State ex rel. Juvenile Department v.Charles, 70 Or. App. 10, 688 P.2d 1354 (1984). This requirement was to prevent cultural bias from coloring decisions concerning the custody of Indian children. This same Oregon court, in a later case, State ex rel. Juvenile Department v. Tucker,710 P.2d 793 (Or.App. 1985), made an exception to the requirement of section 1912(e) where cultural bias was not present. See,D.W.H. v. Cabinet for Human Resources, 706 S.W.2d 840
(Ky.Ct.App. 1986).
In the case sub judice there was no cultural bias involved. These children did not live on an Indian reservation, nor did they practice an Indian lifestyle. The thrust of the evidence was that continued parental custody under the present conditions would result in serious emotional and physical harm to the children. We find no error by the trial court in accepting the testimony of DHR's expert witness.
The evidence is clear and convincing that the problems encountered by the children were due, in part, to a lack of parenting skills by Mrs. Long and her inability to demonstrate affection and, in part, to the behavior of Mr. Long. It is clear from the record that the parents have been unable to properly assume their roles as parents. It is also clear that continued custody of these children by these parents without a serious change in their parenting responsibilities is likely to result in serious emotional and physical harm to these children. By virtue of the trial court's order, the parents are being given another opportunity to demonstrate that they seriously want to be the parents of these children.
The judgment of the trial court is affirmed.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.