v.

**CABINET FOR HEALTH AND FAMILY SERVICES, Commonwealth of Kentucky; A.A.S., a Child; and A.S., Father, Appellees**

**NO. 2014-CA-000639-ME**

Court of Appeals of Kentucky.

RENDERED: DECEMBER 24, 2014; 10:00 A.M.

BRIEF FOR APPELLANT: Kenneth L. McCardwell, Louisville, Kentucky

BRIEF FOR APPELLEE CABINET FOR HEALTH AND FAMILY SER-VICES: G. Thomas Mercer, Louisville, Kentucky

BEFORE: CLAYTON, LAMBERT, AND THOMPSON, JUDGES.

*OPINION*

LAMBERT, JUDGE:

S.L.C.E. (the mother) appeals from the Jefferson Family Court's order terminating her parental rights to her child, A.A.S. (the child). After careful review, we affirm.

The child was born on April 28, 2012, to the mother and A.S. (the father). The Cabinet for Health and Family Services (the Cabinet) filed this action on November 20, 2012, pursuant to Kentucky Revised Statutes (KRS) 625.050, seeking involuntary termination of the parental rights of the mother and father. Although both parents were present in court with their respective counsel when the trial in this action was continued from May 22, 2013, to October 2, 2013, neither parent appeared for trial on the later date and neither parent contacted their respective counsel nor the family court to explain their absence at trial.

The underlying facts are that on April 29, 2010, the child's two half siblings born to the mother and another father, were determined by the Jefferson Family Court to be abused or neglected children within the meaning of KRS 600.020(1). Specifically, the family court found that the children were at risk of abuse or neglect due to domestic violence between the mother and the children's father, who had perpetrated violence on the mother in the children's presence.

On May 1, 2012, the family court issued an emergency custody order placing the child at issue in this case in the emergency custody of the Cabinet, in whose care the child has remained to the present date. On May 3, 2012, the Cabinet's representative filed a verified dependency, neglect, or abuse (DNA) action petition regarding the child, alleging that the child was abused or neglected because the mother had given

birth to the child on April 28, 2012, while three other children of the mother were still in the Cabinet's custody due to the mother's inability to care for the children, her noncompliance with court orders, and her admission that she had been using marijuana, drinking alcohol, and abusing prescription pills. The petition also alleged that the mother reported that the father had hit her with the end of a pistol, choked her to the point of passing out, and had made threats to harm the then unborn child. The father was also alleged to have a lengthy criminal history, including multiple rape, sodomy, unlawful transactions with minors, assault, and violation of Domestic Violence Order charges.

At the temporary removal hearing on May 4, 2012, the family court placed the child in the temporary custody of the Cabinet and issued remedial orders to the child's parents in an effort to reunify the family, including but not limited to orders that the mother complete anger management classes; that the father enroll in and complete a Batterer's Intervention Program (BIP), have a UK TAP assessment, and follow their recommendations; and that both of the child's parents have Jefferson Alcohol Drug Abuse Center (JADAC) assessments and follow their recommendations. The family court also recommended random drug and alcohol screens and supervised visitation. On June 28, 2012, the family court ordered that visits would not occur if the parents did not appear at the L & N Building for visits thirty to forty-five minutes before the visits were scheduled to occur.

On November 8, 2012, the parents appeared with their respective counsel in the DNA action and entered a written stipulation, accepted by the family court, that the child was an abused or neglected child within the meaning of KRS 600.020(1), in that the child had been placed at risk of abuse or neglect because "there was an incidence of domestic violence by father during mother's pregnancy."

In its petition, the Cabinet alleged grounds for termination of parental rights under KRS 625.090(2)(a), (e), (g), and (h). At the hearing, Michelle Cox, the Cabinet's currently assigned case worker for the subject family, testified that the parents had abandoned the child for a period of not less than ninety days. She testified that the parents had failed to visit or otherwise contact the child for a period or periods of not less than ninety days in duration; and the parents had not maintained contact with Ms. Cox during that time to inquire about the well-being of the child. Moreover, since the child was first removed from parental custody, the parents had not availed themselves of the reunification services they were referred to or provided by the Cabinet and had otherwise failed to make sufficient progress in the court-approved case treatment plan to allow for the safe return of the child to their parental care.

The family court also found that as of the date of the filing of the petition for termination, neither of the parents had been fully compliant with the aforementioned remedial orders and the Cabinet's court-approved case treatment plan arising out of the DNA action. Neither of the parents had availed themselves of the services provided by the Cabinet, and they had failed to make sufficient progress in the court-approved case treatment plan to allow for the safe return of the child to parental custody and care. Furthermore, the Cabinet had been unable to recommend a reunification of the child with either parent. Due to each of the parent's failure or inability to fully engage in treatment and reform the behaviors which led to the removal of the child from parental custody, the child could not be safely re-

turned to parental custody, as he had been in state care for the past seventeen consecutive months. During all that time, "for a period of not less than six months," the parents had been continuously or repeatedly incapable of providing essential parental care and protection for each of the children.

The family court also found that while the child had been in state care, each of the parents had continuously or repeatedly failed to provide or had been incapable of providing the child with "essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being." KRS 625.090(2)(g). Although capable of working, neither of the parents had offered any significant financial assistance to meet the child's needs. Drug and alcohol abuse and instability continued to be of concern for both of the parents. The family court found that the parents' failure to meet the child's material needs was due to drug and alcohol abuse more than any other single factor. The court found that it was clear that the parents' on-going failure or inability to provide the child with the material necessities of life was "for reasons other than poverty alone."

The family court also looked at the other grounds listed in KRS 625.090(3) to determine whether termination was in the child's best interests. The family court did not find that either parent suffered from mental illness or mental retardation that would render them unable to care for the physical and psychological needs of the child. See KRS 625.090(3)(a).

Regarding the second factor for acts of abuse or neglect toward any child in the family, the family court was convinced that the child had been abused or neglected within the meaning of KRS 600.020(1), based on the finding that the child's other half-siblings were found to be abused or neglected children in their underlying DNA actions. Further, the family court found that pursuant to KRS 625.090(1)(a)(2), the Cabinet presented evidence beyond a reasonable doubt that the child had been abused or neglected within the meaning of KRS 600.020(1) as a result of being abandoned by each of the parents for a period of not less than ninety days. The child had further been abused or neglected by each of the parents' inability or failure to comply with the court's remedial orders and the Cabinet's court-approved case treatment plan so that the petitioner child could be safely returned to parental custody, and by the failure or inability of each of the parents to do what was necessary to materially support the child.

Regarding the third factor for the Cabinet's reasonable efforts to reunite the child with the parent, KRS 625.090(3)(c), the family court found that the Cabinet made appropriate referrals of the parents to parenting classes; individual therapeutic counseling for the mother and the BIP program for the father; substance abuse treatment and random drug screens; visitation services; and various other services. Ms. Cox testified that, under the circumstances of this case, she was unaware of any other services which the Cabinet could provide or refer the parents so as to allow for the safe reunification of the parents with the child, within a reasonable amount of time considering the age of the child.

The family court considered the fourth factor, the efforts and adjustments the parent has made to his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child. KRS 625.090(3)(d). Regarding this factor, Ms. Cox testified that as of the date of the filing of the petition, the parents had not been fully compliant with the court's reme-

dial orders out of the aforesaid DNA action.

The family court determined that the testimony clearly reflected the parents' failure to make sufficient progress in the court-approved case treatment plan to allow for the safe return of the child to parental custody and care, and the Cabinet subsequently had been unable to recommend further reunification of the child with the parents. The family court took notice of the fact that both parents had failed to take advantage of the court-ordered supervised visitations, often missing many sessions before they stopped coming altogether. Further, the father had not completed BIP sessions, and despite the mother's participation in JADAC, the mother had failed on numerous occasions to attend random drug screens without explanation. Further, Ms. Cox testified that since the proceedings in the instant case were instituted, the family court had yet again removed another child from the mother's custody, a fact of which the family court took judicial notice.

Ms. Cox testified that the mother has been the victim of domestic violence by the fathers of her children on multiple occasions, and she did not seek a domestic violence order against the father for the violence against her referenced in the child's DNA petition. The family court noted that it had concerns about the mother's ability to protect her child if she is unable to avoid dangerous relationships and protect herself.

As a result of the parents' inability to follow the court-approved case treatment plan and avail themselves of the services offered by the Cabinet, the child had been unable to safely return to parental custody and had instead remained in the Cabinet's care and custody for not less than fifteen of the most recent twenty-two months.

Regarding the fifth factor set forth in KRS 625.090(3)(e), the family court held that the child's physical, mental, and emotional needs had been met while in the Cabinet's care and custody and that the child is expected to make continuing improvements in these areas upon termination of parental rights. Ms. Cox testified that she had visited with the child in his foster home, and he was doing well and was attached to his foster parents, who plan to adopt him. Ms. Cox further testified that she transported the child to and from visitation sessions with the parents and supervised those visitation sessions herself. She testified that on those occasions when the parents actually attended, the child would cry from the time she picked him up from his foster home or his daycare where the child's foster grandmother worked until the time she returned the child, with the child's crying only lessening after she took him away from the visitation sessions. Ms. Cox observed that it got to the point that the child would cry upon seeing her enter the foster home, and then the child would go to his foster mother for consolation.

The sixth and final factor the family court considered was the parent's "payment or failure to pay a reasonable portion of substitute physical care and maintenance if able to do so." As noted above, the parents have not paid any substitute financial assistance since the child has been in state care, despite being financially able to do so if they chose to work.

At the hearing, Ms. Cox identified an exhibit as a letter from the Lower Brule Sioux Tribe (hereinafter Tribe) notifying the Cabinet that the Tribe was not in a position to provide services or placement for the child. She testified that the Cabinet had sent documentation to the Tribe identifying the mother's children and their parents as well as a birth certificate show-

ing that the mother was a member of the Tribe.

Subsequent to the trial but before the family court had issued its ruling, the mother's counsel moved the family court to stay its ruling pending a hearing on what should be the proper standard of proof by which it decided the case. The family court granted the stay, heard arguments, and denied the mother's motion, finding no legal basis to apply the "clear and convincing" standard of proof rather than the "beyond a reasonable doubt" standard articulated in the Indian Child Welfare Act, 25 U.S.C. § 1912. In concluding that the Cabinet's termination petition should be granted, the family court held:

> Each individual ground for termination found in this action is sufficient to satisfy the element for termination of parental rights as set forth in KRS 625.090(2). Furthermore, both the written record and the trial evidence reflect that all requirements of the Indian Child Welfare Act, 25 U.S.C. § 1912, have been met.

The family court then entered judgment on December 26, 2013, terminating the parental rights of the mother and father. On January 7, 2014, the mother filed various motions challenging the judgment and for a new trial, including that she should have been notified regarding the standard of proof issue. Those motions were denied by order entered on March 17, 2014, and this appeal by the mother followed.

On appeal, the mother argues that she was deprived of due process of law when she was not notified prior to the termination hearing that the family court would apply the beyond a reasonable doubt standard of proof rather than the clear and convincing standard. This is the mother's sole argument on appeal, as she makes no argument that the termination was other-wise improper or unjustified under the Kentucky statutory scheme.

In response, the Cabinet argues that, assuming the Indian Child Welfare Act (ICWA) applies, the mother was not denied due process of law by the family court's application of the beyond a reasonable doubt standard. In the alternative, the Cabinet argues that per the Kentucky Supreme Court, the ICWA may not apply, and thus the use of a higher standard of proof was harmless and did not deprive the mother of due process of law.

In support of her argument that she was denied due process of law, the mother argues that termination of parental rights trials in Kentucky proceed according to the dictates of KRS 625.090(1), which states: "The Circuit Court may involuntarily terminate all parental rights of a parent of a named child, if the Circuit Court finds from the pleadings and by clear and convincing evidence ..." The mother cites to *D.W.H. v. Cabinet for Human Resources,* 706 S.W.2d 840 (Ky.App. 1986), in support of her position. In *D.W.H.,* the court stated, "Because the father, G.W.H., is a member of the Cheyenne River Sioux Indian tribe, this action was tried, by agreement of all of the parties, pursuant to the Indian Child Welfare Act of 1978" and the beyond a reasonable doubt standard of proof was used. *Id.* at 841. The mother argues that the distinction between the instant case and *D.W.H.* is that there was no agreement between the parties in the instant case to use the beyond a reasonable doubt standard of proof. She contends that where there is no due process notice of intent to use a standard of proof other than the standard of proof from KRS 625.090(1) requirements, and the record clearly evidences this lack of notice, there could not exist "agreement of all of the parties." *Id.* at 841.

As mentioned above, the Cabinet presents its argument under the ICWA and in the alternative argues that the ICWA may not apply. We agree with the latter of the Cabinet's arguments. In *Rye v. Weasel and The Standing Rock Sioux Tribe,* 934 S.W.2d 257 (Ky.1996), the Kentucky Supreme Court held that the ICWA did not apply because of the Existing Indian Family Doctrine. The Court reversed this Court and upheld the trial court's determination that custody of the child in question should remain with her foster mother rather than The Standing Rock Sioux Tribe. *Id.* at 264. Regarding the authority for the Existing Indian Family Doctrine, the *Rye* Court stated that "the courts have held that ICWA was not intended by Congress to be applied to cases where there is no existing Indian family or environment because the purpose and intent of Congress cannot be furthered by such application of the Act." *Id.* at 261. The Court found that there was never an existing Indian family in the case before it to be disrupted by the trial court's custody order, inasmuch as the father was unknown, the mother had discontinued contact with the child after voluntarily placing it with foster parents, and the Tribe had declined to render any assistance to the child.

In the present case, the testimony of Ms. Cox indicates that the mother and father abandoned the child, with the mother ceasing all contact with the child after a short period of sporadic visitation following the child's removal from her custody on May 1, 2012, by emergency contact order, only days after the child's birth on April 28, 2012. The record further reflects that The Lower Brule Sioux Tribe had communicated to Cabinet officials that it was unable to provide any placement or assistance to the child in this case and thus would not intervene in the termination proceedings.

We agree that in the instant case, the child was not in any way raised in an Indian home or environment and then removed, which is what Congress intended to prevent with the creation of the ICWA. Thus, under the Existing Indian Family Doctrine, which the highest court in this state adopted in *Rye,* the ICWA is not triggered and the beyond a reasonable doubt standard was not appropriate.

We also agree with the Cabinet, however, that the mother was not prejudiced in this case. The family court did not reach its decision by applying a lesser standard of proof than the clear and convincing standard applicable in non-ICWA cases. Instead, the family court applied the higher beyond a reasonable doubt standard, and the mother otherwise has not demonstrated any way in which she has been actually prejudiced by application of the higher standard of proof rather than the lesser one. As the mother makes no challenge whatsoever to the trial court's findings regarding the termination of her parental rights, we cannot say that the findings are clearly erroneous.

A careful review of the record and the testimony presented at the hearing indicates that the parents made very minimal efforts on behalf of the child, were addicted to drugs and alcohol, and abandoned the child within days of his birth. Accordingly, we find no error with the family court's order terminating the parental rights of the mother to the child.

Finding no reversible error, we affirm the December 20, 2013, judgment of the Jefferson Family Court.

ALL CONCUR.